Nos. 14-1469, 15-1390 (consolidated)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

**Craig Williams,**

*Appellant,*

-against-

**Secretary Pennsylvania Department of Corrections; Dorina Varner, Chief Grievance Officer; Tina Friday, Records Officer, in her Individual and Official Capacity; Jeffrey R. Rogers, Manager, in his Individual and Official Capacity; Tracy Shawley, Grievance Coordinator, in her Individual and Official Capacity; and Louis Folino, in his Individual and Official Capacity,**

*Appellees.*

**Shawn Walker,**

*Appellant,*

-against-

**Michael A. Farnan; Secretary Pennsylvania Department of Corrections; Superintendent Graterford SCI; Cindy G. Watson, and others to be named later,**

*Appellees.*

On Appeal from the United States District Court
for the Western District of Pennsylvania, No. 2:12-cv-00944
Before the Honorable Mark R. Hornak, and
On Appeal from the United States District Court
for the Eastern District of Pennsylvania, No. 2:07-cv-04977
Before the Honorable R. Barclay Surrick

**JOINT APPENDIX
CORRECTED VOLUME II OF III
PAGES JA-50 TO JA-188**

*-Counsel for Appellants on Inside Cover-*

James J. Bilsborrow, Esq.
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
T: (212) 558-5500
F: (646) 293-7937
*jbilsborrow@weitzlux.com*

*Counsel for Appellants*

# TABLE OF CONTENTS

## Volume I

**From the United States District Court Docket for <u>Williams v. Wetzel</u>, 2:12-cv-00944-MRH-LPL (W.D. Pa.)**

District Court Docket Sheet.................................................................................JA-1

Notice of Appeal (Feb. 21, 2014)......................................................................JA-10

Memorandum Order Adopting Report and Recommendation (Jan. 22, 2014) ......................JA-11

Report and Recommendation (Dec. 9, 2013) ......................................................JA-13

**From the United States District Court Docket for <u>Walker v. Farnan</u>, 2:07-cv-04977-RBS (E.D. Pa.)**

District Court Docket Sheet.................................................................................JA-30

Notice of Appeal (Feb. 4, 2015)........................................................................JA-37

Order Granting Summary Judgment (Jan. 29, 2015).............................................JA-40

Memorandum In Support of Order Granting Summary Judgment (Jan. 29, 2015).................JA-41

## Volume II

**From the United States District Court Docket for <u>Williams v. Wetzel</u>, 2:12-cv-00944-MRH-LPL (W.D. Pa.)**

Complaint (July 11, 2012).................................................................................JA-50

Defendants' Answer to Complaint (Nov. 14, 2012)...............................................JA-60

Defendants' Concise Statement of Material Facts Not In Dispute (Apr. 25, 2013)................JA-67

    Exhibit 1, Court of Common Pleas of Philadelphia County Criminal Docket CP-51-CR-0525631-1987 ......................................................................................JA-72

    Exhibit 2, 6.5.8, Capital Case Procedures Manual Section 1 – Phase I, Inmates........JA-90

    Exhibit 3, Administrative Custody Procedures DC-ADM 802, Effective Date February 12, 2007 .................................................................................JA-92

    Exhibit 4, Grievances and Final Appeal Decisions ...................................JA-126

i

Exhibit 5, DC-141 Part III Program Review Committee Action ...............................JA-155

Exhibit 6, Declaration of Shirley R. Moore-Smeal ...................................JA-173

Exhibit 7, Sentence Status Summary.......................................................JA-179

Plaintiff's Concise Statement of Material Facts ...................................JA-186

## Volume III

**From the United States District Court Docket for <u>Walker v. Farnan</u>, 2:07-cv-04977-RBS (E.D. Pa.)**

Amended Complaint (Aug. 25, 2009) ...............................................................JA-189

Defendants' Answer With Affirmative Defenses (Oct. 11, 2011) ........................JA-202

Defendants' Motion for Summary Judgment (Apr. 16, 2012) ............................JA-212

Exhibit 1 to Defendants' Motion for Summary Judgment (Apr. 16, 2012) ..............JA-230

Exhibit 2 to Defendants' Motion for Summary Judgment (Apr. 16, 2012) ..............JA-245

Exhibit 3 to Defendants' Motion for Summary Judgment (Apr. 16, 2012) ..............JA-268

Plaintiff's Response In Opposition to Defendants' Statement of Undisputed or Indisputable Facts.......................................................................................JA-282

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Name and address of Plaintiff:

Chris Williams
175 Progress Drive
Waynesburg, PA 15370-8082

v.

Full name, title, and business address
of each defendant in this action:
1 John Wetzel Secretary of the Dept. of
Corrections P.O. Box 598, 2520 Lisburn Road
CampHill, PA 17001-0598

2 Dorina Varner Chief Grievance Coordinator
P.O. Box 598, 2520 Lisburn Road
CampHill, PA 17001-0598

Use additional sheets, if necessary
Number each defendant.

12 - 0944

**RECEIVED**

JUL 10 2012

CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

Plaintiff brings this action against the above named and identified defendants on the following cause of action:

I.    Where are you now confined? S.C.I- Greene County State Prison

What sentence are you serving? Life

What court imposed the sentence? Philadelphia County

II.   Previous Lawsuits

A.   Describe any and all lawsuits in which you are a plaintiff which deal with the same facts involved
in this action.  (If there is more than one lawsuit, describe the additional lawsuits on another piece
of paper, using the same outline.)

1.  Parties to this previous lawsuit

Plaintiffs_____

_____

Defendants _____

2.  Court (if federal court, name the district; if state court, name the county) and docket number

_____

3. Tina Friday the record officer is being sued in her individual and official capacity. 175 Progress Drive, Waynesburg, Pennsylvania 15370-8082.

4. Jeffrey R. Rogers Program Manager is being sued in his individual and official capacity. 175 Progress Drive, Waynesburg, Pennsylvania 15370-8082.

5. Tracy Shawley Grievance Coordinator is being sued in her individual and official capacity. 175 Progress Drive, Waynesburg, Pennsylvania 15370-8082.

6. Louis S. Folino is being sued in his individual and official capacity. 175 Progress Drive, Waynesburg, PA 15370-8082. He is the Superintendant.

3. Name of judge to whom case was assigned _____

4. Disposition (For example:  Was the case dismissed?  Was it appealed?  Is it still pending?)
   _____

5. Approximate date of filing lawsuit _____

6. Approximate date of disposition _____

B. Prior disciplinary proceedings which deal with the same facts
   involved in this action:

   Where?_____
   When?_____
   Result:_____
   _____
   _____

III.  What federal law do you claim was violated? The Fourteenth
      Amendment Substantive and Procedural Due Process

IV.   Statement of Claim

      (State here as briefly as possible the facts of your case.  Do not give any legal arguments or cite
      any cases or statutes.  If you intend to allege a number of related claims, number and set forth
      each claim in a separate paragraph.  Use as much space as you need.  Attach extra sheet if
      necessary.)

A. Date of event: July 11th 2006

B. Place of event: S.C.I. - Greene County State Prison

C. Persons involved--name each person and tell what that person did
   to you: 1. Tina Friday stated Plaintiff was being held inside the
   Capital Case unit as a pre-trial detainee per D.O.C policy 6.5.8.
   Capital Case Procedures Manual, Section 1-Phase 1 Inmates.
   Tina states if the District Attorney intends to appeal, the Inmate
   shall not be moved from the Capital Case unit. According to the
   Philadelphia District Attorney's Office your case is currently on
   appeal with the Pa. Supreme Court.
   2. Tina Friday the record officer misrepresented the District
   Attorney Office in her response, in order to deny Plaintiff
   due-process as a pre-trial detainee, because the District
   Attorney is the Office that requested a new sentencing

was not released into the general population.

3. Jeffrey R. Rogers the Program Manager stated the same verbatim paragraph as Tina Friday. His response was designed to keep Plaintiff under objective and subjective punishment. Plaintiff constitutionally created liberty interest to be free from punishment at the time of this incident violated due-process.

4. Tracy Shawley the Grievance Coordinator thwarted Plaintiff grievance from being filed and reviewed in 2011 challenging the 6.5.8 Capital case policy as being unlawful and unconstitutional. This policy is designed to deny pre-trial detainees due-process and their constitutional created liberty interest to be free from punishment. Tracy Shawley pretext states Plaintiff had fifteen days to file. The policy was implemented in 2002.

5. Louis S. Folino the Superintendant upheld all Plaintiff's appeals from the responses given by his employees. Louis S. Folino violated Plaintiff's protected liberty interest to be free from punishment as a pre-trial detainee at the time and denied him substantive and procedural due process by failing to give Plaintiff a notice and hearing as to why he should continue to be held on deathrow without the sentence.

6. Dorina Varner is the Chief Grievance Coordinator for the entire prison industry. Her title gives her authority to overturn any final decision by prisoners against Superintendants. Plaintiff was filing appeals to her office from October 2008 up until April 2011. Dorina Varner stated in her June 17th 2010 decision....

you claim that your execution sentence was vacated in July 2006 and your being improperly housed on the Capital Case unit. You allege that your rights are being violated as a result... The record reflects that your execution sentence was not vacated as you claim. Until such time that your execution sentence is vacated, or changed, you will remain a Capital case prisoner who is properly housed in the Capital Case unit.... Dorina Varner Knowingly and intentionally continued to deny Plaintiff his constitutional created liberty interest to be free from punishment as a pre-trial detainee at the time in violation of substantive and procedural due-process. Plaintiff sentence was vacated as Tina Friday and Jeffrey Rodgers records shows, however Plaintiff still remained on deathrow.

7. John Wetzel is the Secretary of the entire prison system. All institutional policies and procedures are created, amended, or changed by his authority alone. John Wetzel continues the policies that are in place by his predecessors. Which are a blatant disregard for pre-trial detainees rights under substantive and procedural due process and a constitutional created liberty interest to be free from punishment. He is aware that the 6.5.8 policy continues to hold pre-trial detainees inside the C.C.U. as if they still have a sentence of death.

## Comparison Of Conditions Of Confinement That Amount To Punishment

Plaintiff restricted conditions of confinement while on deathrow:

1. Twenty-two hours inside the cell with two hours of yard, law library, screen visits and 15 minute showers outside the cell.

2. Handcuffed and escorted by two guards when leaving the cell and coming back.

3. You must be inside a locked cage during law library, showers, and yard.

4. Jobs consist of being a janitor, librarian, shower cleaner, and yard worker. Out of 156 people there are only jobs for 32 people.

5. Law Library sign up sheet is once a week. Unless some sign you up on their time slot, or you can be placed on the on call list, if a time slot is open.

6. Three phone calls a week. Fifteen minutes, the phone is brought to your cell door.

7. There's no dining hall, you must eat inside your cell alone.

8. You are not permitted a cellmate.

9. Games that stimulate the mind are limited to: Scrabble, Chess, Checkers, Monopoly, and cards. You play with the person you signed up with on your pod inside the yard cage. Or, if the person that's locked in the cage next to you can play through the fence holes.

10. No indoor recreation, no cigarettes, ice cream, juice, razors, or boots for deathrow prisoners.

11. No virtual televised visits for the long distance Capital case. Just two hour non contact.

12. No vocational programs, No drug or alchol programs, no anger management therapy, just psychiatrist and psychologist consultation at your cell door.

13. You have to be handcuffed while getting your haircut

14. The only educational program is in cell G.E.D. program.

15. No privacy during sick call consultation by the doctor or P.A. Your medical problems are divulge to the entire pod because your confabbing at your cell door.

16. Capital cases cannot go to the store on their own. The items are carted over to the block.

## Comparison Of General Population Less Restrictive Ordinary Prison Life.

1. Prisoners are permitted to leave the cells and blocks without being escorted or handcuff.

2. Prisoners are permitted to eat together inside the dining hall.

3. Prisoners are permitted to go to the prisoners store to purchase items.

4. Prisoners are permitted to congregate at religious services.

5. Prisoners are allowed two hours outside their cells on the blocks to watch television, play cards, confab, play games, and use the phone.

6. Showers are everyday without being escorted or cuffed.

7. Phone calls are every other day, the phones are used outside the cells.

8. Two hour yard twice a day and 3 times a day during spring and summer daylight savings time. Basketball, football, handball, baseball, track, weights, pull-up bars, sit-up seat, dip bar, table and benchs are in the yard.

9. Vocational job training programs are taught, G.E.D. and College courses are taught, Money Saving classes are taught and guidance counselors are provided.

10. Indoor Gym, weights, heavy bag, treadmill, bicycle mills, handball and basketball.

11. Barber Shop with the chairs mirrors, etc. and no cuffs.

12. Population can purchase boots, ice cream, juice, cigarettes and razors.

13. Jobs are plentiful: C.I. shop, recreation yard worker, activities recreation workers, block workers, laundry, store worker, kitchen worker, Food Warehouse worker, furnary worker, Tutor, librarian and law clerk workers, Barber shop, Photographer, outside community job programs, receiving room worker, outdoor

cleaning crews, plumbing, electrician, etc.

14. Contact visits and virtual televised visits for long distance prisoners. Food can be purchased for the prisoner inside the visiting room.

15. Library once a week with no cages open room with computer programs that have reading material and computers with legal material. Newspapers, Magazines and physical books can be read.

16. Medication is dispensed at the infimary and sick call is consulted in private.

17. Psychologist and Psychiatrist consult with prisoners in an office.

18. Pictures are taken without being handcuffed

19. Sodas and Juices can be purchased in the yard.


8. Plaintiff analysis comparison under the due process standard makes known that defendants denied him access to the general prison population that is less restrictive and open, to the C.C.U. restrice housing unit when compared. Defendant conduct is designed to punish pre-trial detainees whom have a constitutional liberty interest to be free from punishment all because a person sucessfully overturn their sentence on conviction

hearing. It was Plaintiff appealing for relief on the new trial claims. The Friday response denied Plaintiff his constitutionally created liberty interest to be free from punishment by placing him under objective and subjective punishment when he

V.   Did the incident of which you complain occur in an institution or place of custody in this District?
If so, where?

Inside Greene County State Correctional Institution in Waynesburg, Pennsylvania

and answer the following questions:

A.   Is there a prisoner grievance procedure in this institution?
Yes (✓) No ( )

B.   Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes (✓) No ( )

C.   If your answer is YES,

1.   What steps did you take? I filed a grievance in 2008, 2010 and 2011 stating my rights were being violated.

2.   What was the result? I was denied relief at all stages of the grievance process.

D.   If your answer is NO, explain why not: _____
_____

E.   If there is no prison grievance procedure in the institution, did you complain to prison authorities?
Yes ( )   No ( )

F.   If your answer is YES,

1.   What steps did you take? _____
_____

2.   What was the result? _____

VI.   Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statues.

I seek a jury trial, 500 dollars a day for compensation and 500 dollars a day from each defendant punitive damages

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

June 27th 2012
(Date)

Craig Williams
(Signature of Plaintiff)

IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRAIG WILLIAMS,                        )
                                       )
              Plaintiff,               )
                                       )
       v.                              ) Civil Action No.   12-944
                                       )
JOHN WETZEL, DORINA VARNER,            )
TINA FRIDAY, JEFFREY R. ROGERS,        )
TRACY SHAWLEY, LOUIS S. FOLINO,        )
                                       )
              Defendants.              )

### DEFENDANTS' ANSWER TO COMPLAINT

AND NOW, comes all the defendants, by their counsel, Linda L. Kelly, Attorney

General, Kemal Alexander Mericli, Senior Deputy Attorney General, Mary L. Friedline, Senior

Deputy Attorney General, who make the following answer to the complaint pursuant to F.R.C.P.

8:

1.  The statements at I. were true when made, but plaintiff has since been duly transferred to

    SCI-Albion as September 13, 2012, after this suit was filed.


2.  There are no statements made at II.


3.  The statements made at III. are conclusions of law to which no response is required or if

    deemed factual are denied and strict proof is demanded at trial.

1

4. The statement made at IV. A. is admitted, but it is noted if plaintiff's claim is limited to the date given of July 11, 2006 the statute of limitation ran by July 11, 2008 but this complaint was not filed until June 27, 2012.  Plaintiff makes no effort to clarify if he complains of a continuing violation or not.

5. The statement made at IV. B. is admitted.

6. At present, defendants admit the statement plaintiff makes at IV. C.1. was made in response to a grievance at No. 317048 by defendant Friday on May 18, 2010 and to a grievance at No. 243159 on October 7, 2008.

7. The statement plaintiff makes at IV. C.2, is argumentative and ultimately states a conclusion of law to which no response is required, or, if deemed factual, it is denied that defendant Friday's statement is either mistaken in effect, or a material misstatement in respect to DOC policy (regarding the capital case unit) as set forth in 6.5.8, under the circumstances of plaintiff's specific case.  So long as the re-imposition of a death sentence remains a possibility in plaintiff's case, he should be held in the capital case unit or equivalent terms where ever he is housed in the state prison system, according to DOC policy.  Clark v. Beard, 918 A. 2d 155 (Pa. Cmwlth. 2007), reh. en banc denied.

8. At this time, after reasonable investigative efforts among available grievance and PRC documents from SCI-Greene, defendants cannot confirm or deny that defendant Rogers stated "the same verbatim paragraph" as Ms. Friday as set forth at IV. C.3.  It is therefore

2

denied as fact and strict proof demanded at trial. Insofar as pertinent, defendants'
response at 7. above is incorporated by reference to note that such a statement is not
wrong in terms of DOC policy. The rest and remainder of IV. C.3. is a conclusion of law
to which no response is required or if deemed factual, denied.

9.  At this time, after reasonable investigation (see 8. above) defendants cannot confirm or
deny the first sentence of IV. C.4., so it is denied and strict proof demanded at trial. The
rest and remainder is a conclusion of law to which no response is required or if deemed
factual, is denied.

10. The first sentence of IV. C.5. is admitted insofar as it pertains to any relevant grievance
appealed to the superintendent's review. The rest and remainder is a conclusion of law to
which no response is required or if deemed factual, is denied.

11. The first eight sentences of IV. C.6. are admitted, (ending with "who is properly housed
in the Capital Case Unit"). The rest and remainder is a conclusion of law to which no
response is required or, if deemed factual, is denied.

12. The first sentence of IV. C.7. is admitted. The second sentence is a conclusion of law or,
if deemed factual, after reasonable investigation at this stage it cannot be confirmed or
denied as an accurate statement of the extent of his legal authority as Secretary so it is
denied and strict proof demanded at trial. As a conclusion of law no response is required.
The third sentence is denied in absolute or unqualified terms, although it may be true in

3

specific instances. The next sentence is a conclusion of law to which no response is
required or, if deemed factual, denied.

13. Regarding the comparison of conditions of confinement for capital case inmates with
those general population, it is admitted that they are more strict than those for general
population because capital case prisoners are held in administrative custody (AC) under
DC-ADM 802. To the extent those alleged here by plaintiff to have been what he
experienced at SCI-Greene are consistent with DC-ADM 802, which controls the matter,
they are admitted. To the extent they are represented as being materially inconsistent
with DC-ADM 802, at this stage of the matter defendants cannot confirm or deny after
reasonable investigation of the documents from SCI-Greene their accuracy, so they are
denied and strict proof demanded at trial. The same is the case for the alleged conditions
of the general population at SCI-Greene; after reasonable investigation as noted they
cannot be admitted or denied and so are denied and strict proof demanded at trial.

14. The statements at V. A. and B. are admitted.

15. The statements at V. C. are admitted as to 2008 and 2010 but after reasonable
investigation of the type noted previously they cannot be admitted or denied as to 2011
and so are denied with strict proof demanded at trial.

16. VI. is a request for relief that requires no response.

4

### SECOND DEFENSE

This action is barred by the statute of limitations.

### THIRD DEFENSE

This action is barred by the failure to exhaust administrative remedies as required by the

Prison Litigation Reform Act.

### FOURTH DEFENSE

Qualified immunity applies.

### FIFTH DEFENSE

Defendants, or certain of them, were not "personally involved" to the extent required for

liability for the alleged wrongs under 42 U.S.C. section 1983.

### SIXTH DEFENSE

The complaint fails to state a claim for which relief can be granted under F.R.C.P. 12

(b)(6).

### SEVENTH DEFENSE

Conateral estoppel/issue preclusion applies to bar the action.

### EIGHTH DEFENSE

The complaint fails to state a claim for violation of the right to substantive due process or

the right to procedural due process.

**WHEREFORE,** defendants respectfully request that judgment be granted in this action in their

favor.

5

Respectfully submitted,

LINDA L. KELLY
Attorney General


/s/ Kemal Alexander Mericli
Kemal Alexander Mericli
Senior Deputy Attorney General
PA ID 27703

GREGORY R. NEUHAUSER
Chief Deputy Attorney General
Chief, Litigation Section


OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219


November 14, 2012


6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within *Answer to Complaint* was

served upon the following individual via first-class mail:

Craig Williams
BX-9919
SCI-Albion
10745 Rt. 18
Albion, PA 16475

By:     /s/ Kemal Alexander Mericli
           Kemal Alexander Mericli
           Senior Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
564 Forbes Avenue, Manor Complex
Pittsburgh, PA 15219

Date: November 14, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.   12-944 |
| | ) | |
| JOHN WETZEL, DORINA VARNER, | ) | |
| TINA FRIDAY, JEFFREY R. ROGERS, | ) | |
| TRACY SHAWLEY, LOUIS S. FOLINO, | ) | |
| | ) | |
| Defendants. | ) | |

## CONCISE STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

AND NOW, comes the defendants, who respectfully submit the following

pursuant to Local Rule 56.1.B.:

1.  Craig Williams, plaintiff, was convicted of first degree murder and

sentenced to death. Commonwealth v. Williams, 532 Pa. 265, 615 A.2d 716

(1992). The initial denial of his petition for post-conviction relief was reversed

on grounds of procedural error by the lower court and remanded.

Commonwealth v. Williams, 566 Pa. 553, 782 A.2d 517 (2001).

2.  On July 11, 2006, he obtained partial relief under the Post-Conviction

Relief Act in that the death penalty was vacated and a new death penalty

phase/sentencing hearing was granted by the Court of Common Pleas of

Philadelphia County. But a new trial on his first degree murder conviction was denied. Commonwealth v. Williams, 602 Pa. 360, 980 A.2d 510 (2009).

3.   The District Attorney of Philadelphia County acceded to the ruling requiring a new penalty phase but Williams appealed the denial of a new trial. Id.; see also, Appendix, Exhibit 1, Docket entries, Docket Number: CP-51-CR-0525631-1987 (available at http://ujsportal.pacourts.us, click "Docket Sheets" then click "Common Pleas Courts";  last visited April 17, 2013).

4.   Meanwhile, Williams remained on death row pursuant to DOC policy 6.5.8. S as interpreted by the DOC to mean that he would remain in the Capital Case Unit or death row until it was definitely established he would not be resentenced to death but instead to life imprisonment.  Appendix, Exhibit 2, 6.5.8. S (A copy was provided in discovery. See Doc. 24, Paragraph 8.)

5.   A sworn Declaration of Executive Deputy Secretary Shirley R. Moore Smeal of the Pennsylvania Department of Corrections explaining the legitimate penological justifications for this policy has been obtained and is provided. Appendix, Exhibit 6; see also, Exhibit 7, Sentence Status Summaries.

6.   Conditions of confinement for a prisoner on death row are the same as

2

those for an inmate held in administrative custody under DC-ADM 802 that

defines the custody status of both. Appendix, Exhibit 3

(http://www.cor.state.pa.us, click on "DOC Policies" for current version in

effect; date last visited April 17, 2013).


7.    Williams filed grievances complaining that he should be placed in general

population. These were denied and at least twice, once in 2008 and once in

2010, their administrative review was exhausted. In response he was plainly

told he was being held pursuant to the DOC policy embodied in 6.5.8.S as it

was interpreted by the department, since the re-imposition of the death

penalty remained a possibility and he had not been resentenced to life.

Appendix, Exhibit 4.


8.    He was provided with periodic reviews during this time.  Appendix,

Exhibit 5.


9.    The Supreme Court of Pennsylvania affirmed the denial of post-

conviction relief in the form of a new trial on October 2, 2009. Id. The

Supreme Court of the U.S. denied certiorari on June 10, 2010. Williams v.

Pa., __U.S.__, 130 S.Ct. 3353 (2010).


10.   The case returned to the court of common pleas. On May 1, 2012 the

District Attorney withdrew the death penalty and Williams was resentenced to life and ordered to be placed in general population forthwith. Exhibit 1. On May 23, 2012, he was returned to administrative custody for an unrelated reason. Appendix, Exhibit 8.  Since September 13, 2012 he has been transferred from SCI-Greene and has been imprisoned at SCI-Albion where there is no death row.

11.   All copies of prison records and policies provided in the Appendix are true and authentic.

Respectfully submitted:

**KATHLEEN G. KANE**
**Attorney General**

By:   /s/Kemal Alexander Mericli
Kemal Alexander Mericli
Senior Deputy Attorney General
Attorney I.D. No. 27703

Gregory Neuhauser
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
564 Forbes Avenue
6th Floor, Manor Complex
Pittsburgh, PA   15219

Date:  April 25, 2013

4

### CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2013, I electronically filed the foregoing **Concise Statement of Material Facts Not In Dispute** with the Clerk of Court using the CM/ECF system.  This document will be mailed via first class mail postage prepaid to the following participant:

Craig Williams
BX-9919
SCI Albion
10745 Route 18
Albion, PA 16475


/s/Kemal Alexander Mericli
Kemal Alexander Mericli
Senior Deputy Attorney General

Office of Attorney General
564 Forbes Avenue
6th Floor, Manor Complex
Pittsburgh, PA   15219

Date:  April 25, 2013

# EXHIBIT 1

Court of Common Pleas of
Philadelphia County Criminal
Docket CP-51-CR-0525631-1987



# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

**DOCKET**

Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Craig Williams

Page 1 of 17

**CASE INFORMATION**

Cross Court Docket Nos: MC-51-CR-0424041-1987

| | |
|---|---|
| Judge Assigned: Lerner, Benjamin | Date Filed: 05/21/1987        Initiation Date: 05/21/1987 |
| OTN: M 306921-6 | Lower Court Docket No: 08704240411 |
| Initial Issuing Authority: | Final Issuing Authority: |
| Arresting Agency: Philadelphia Pd | Arresting Officer: Affiant |
| Case Local Number Type(s) | Case Local Number(s) |
| Police Incident Number | 8722022083 |
| District Control Number | 8722022083 |
| Legacy Microfilm Number | 93004019 |
| Legacy Docket Number | C8705256311 |

**STATUS INFORMATION**

| Case Status: Closed | Status Date | Processing Status | Arrest Date: 04/25/1987 |
|---|---|---|---|
| | 05/01/2012 | Sentenced/Penalty Imposed | |
| | 04/10/2012 | Awaiting Sentencing | |
| | 04/10/2012 | Awaiting PSI | |
| | 04/04/2012 | Awaiting Sentencing | |
| | 04/04/2012 | Awaiting PSI | |
| | 10/02/2009 | Completed | |
| | 06/14/2007 | Appealed | |
| | 05/07/2007 | Awaiting Grazier Hearing | |
| | 07/12/2006 | Awaiting Appellate Court Decision | |
| | 07/11/2006 | Completed | |
| | 01/29/1990 | Migrated Final Disposition | |
| | 05/21/1987 | Migrated Case (Active) | |

Complaint Date:   05/21/1987

CPCMS 9082                                                                                                    Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY



Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Craig Williams

Page 2 of 17

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Post Conviction Relief Act | 09/10/2003 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 10/27/2003 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 12/09/2003 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 04/23/2004 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 06/23/2004 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 07/21/2004 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 09/20/2004 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 10/21/2004 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 11/08/2004 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 12/14/2004 | 8:30 am | 1002 | | Scheduled |
| Post Conviction Relief Act | 01/21/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 01/27/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 02/16/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 02/24/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 05/25/2005 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 05/26/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 06/29/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 07/20/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 09/21/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |

CPCMS 9082

Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Case 2:12-cv-00944-MRH-LPL    Document 38-1    Filed 04/25/13    Page 4 of 18

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY



**Docket Number: CP-51-CR-0525631-1987**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Craig Williams

Page 3 of 17

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Post Conviction Relief Act | 10/18/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 11/29/2005 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 12/21/2005 | 8:30 am | 200 | | Scheduled |
| Post Conviction Relief Act | 03/03/2006 | 8:30 am | 1002 | | Scheduled |
| Post Conviction Relief Act | 03/14/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 03/15/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 03/16/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 03/17/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 03/20/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 03/21/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 04/13/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 04/19/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 04/20/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 05/17/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 05/18/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 05/19/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 05/25/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 06/01/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |
| Post Conviction Relief Act | 07/11/2006 | 8:30 am | 1002 | Senior Judge John J. Poserina Jr. | Scheduled |

Printed: 03/01/2013

CPCMS 9082

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet Information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

JA-75

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

DOCKET

**Docket Number: CP-51-CR-0525631-1987**

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Craig Williams

Page 4 of 17

CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Grazier Hearing | 05/10/2007 | 9:00 am | 1002 | Senior Judge John J. Poserina Jr. | Continued |
| Status Listing | 05/14/2007 | 9:00 am | 1002 | Senior Judge John J. Poserina Jr. | Continued |
| Status Listing | 05/15/2007 | 9:00 am | 1002 | Senior Judge John J. Poserina Jr. | Continued |
| Status Listing | 12/15/2011 | 9:00 am | 1105 | Judge Benjamin Lerner | Continued |
| Status Listing | 01/12/2012 | 9:00 am | 1105 | Judge Benjamin Lerner | Continued |
| Status Listing | 02/09/2012 | 9:00 am | 1105 | Judge Benjamin Lerner | Continued |
| Status Listing | 03/15/2012 | 9:00 am | 1105 | Judge Benjamin Lerner | Continued |
| Status Listing | 04/04/2012 | 9:00 am | 1105 | Judge Benjamin Lerner | Scheduled |
| Sentencing | 04/16/2012 | 9:00 am | 1105 | Judge Benjamin Lerner | Continued |
| Sentencing | 05/01/2012 | 9:00 am | 1105 | Judge Benjamin Lerner | Scheduled |

CONFINEMENT INFORMATION

| Confinement Known As Of | Confinement Type | Destination Location | Confinement Reason | Still In Custody |
|---|---|---|---|---|
| 06/28/2012 | DOC Confined | SCI Albion | | Yes |

DEFENDANT INFORMATION

Date Of Birth: 04/28/1964    City/State/Zip: PHILA, PA 19100

**Alias Name**
Carter, Craig
Davis, Barry
Williams, Samuel

| Participant Type | Name |
|---|---|
| Defendant | Williams, Craig |

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | | 18 § 907 | POSSESSING INSTRUMENTS OF CRIME | 04/03/1987 | M 306921-6 |
| 2 | 2 | | 18 § 907 | POSSESSING INSTRUMENTS OF CRIME WEAPON | 04/03/1987 | M 306921-6 |
| 3 | 3 | | 18 § 2705 | RECKLESSLY ENDANGERING ANOTHER PERSON | 04/03/1987 | M 306921-6 |
| 4 | 4 | | 18 § 2502 | MURDER-1ST DEGREE | 04/03/1987 | M 306921-6 |
| 5 | 5 | | 18 § 2503 | VOLUNTARY MANSLAUGHTER | 04/03/1987 | M 306921-6 |

Printed: 03/01/2013

CPCMS 9082

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

**Docket Number: CP-51-CR-0525631-1987**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Craig Williams

Page 5 of 17

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|------|-----------|-------|---------|---------------------|-------------|-----|
| 6 | 6 | | 18 § 2604 | INVOLUNTARY MANSLAUGHTER | 04/03/1987 | M 306921-6 |

**Disposition**

| Case Event | | |
|---|---|---|
| Sequence/Description | Disposition Date | Final Disposition |
| Sentencing Judge | Offense Disposition | Grade    Section |
| Sentence/Diversion Program Type | Sentence Date | Credit For Time Served |
| Sentence Conditions | Incarceration/Diversionary Period | Start Date |

**Migrated Disposition**

Migrated Dispositional Event — 01/29/1990 — Final Disposition

1 / POSSESSING INSTRUMENTS OF CRIME — Guilty — 18 § 907

   Stiles, Michael R. — 01/29/1990
     Confinement — Min of 2.00 Years 6.00 Months
       Max of 5.00 Years

   Lerner, Benjamin — 05/01/2012
     Confinement — Min of 2.00 Years 6.00 Months
       Max of 5.00 Years

2 / POSSESSING INSTRUMENTS OF CRIME WEAPON — Nolle Prossed — 18 § 907

   Stiles, Michael R. — 01/29/1990

   Lerner, Benjamin — 05/01/2012

3 / RECKLESSLY ENDANGERING ANOTHER PERSON — Guilty — 18 § 2705

   Stiles, Michael R. — 01/29/1990
     Confinement — Min of 1.00 Years
       Max of 2.00 Years

   Lerner, Benjamin — 05/01/2012
     Confinement — Min of 1.00 Years
       Max of 2.00 Years

4 / MURDER-1ST DEGREE — Guilty — 18 § 2502

   Stiles, Michael R. — 01/29/1990
     Death Penalty
     Financial Assessments

   Lerner, Benjamin — 05/01/2012
     Confinement — LIFE
       Upon appeal the death penalty has
       The defendant is to be taken off of
       The sentence on the other charges
       The defendant is to receive a copy
       Court Costs

CPCMS 9062

Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Craig Williams

Page 6 of 17

**Disposition**

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | Credit For Time Served | |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date | |
| Sentence Conditions | | | |
| Death Penalty | | | |
| 5 / VOLUNTARY MANSLAUGHTER | Not Guilty | 18 § 2503 | |
| Stiles, Michael R. | 01/29/1990 | | |
| Lemer, Benjamin | 05/01/2012 | | |
| 6 / INVOLUNTARY MANSLAUGHTER | Nolle Prossed | 18 § 2504 | |
| Stiles, Michael R. | 01/29/1990 | | |
| Lemer, Benjamin | 05/01/2012 | | |

**LINKED SENTENCES:**

**Link 1**
CP-51-CR-0525631-1987 - Seq. No. 3 (18§ 2705 §§ ) - Confinement is Concurrent with
CP-51-CR-0525631-1987 - Seq. No. 4 (18§ 2502 §§ ) - Confinement

**Link 2**
CP-51-CR-0525631-1987 - Seq. No. 1 (18§ 907 §§ ) - Confinement is Concurrent with
CP-51-CR-0525631-1987 - Seq. No. 4 (18§ 2502 §§ ) - Confinement

| Name: | Philadelphia County District Attorney's Office, Esq. Prosecutor | Name: | Gary Sanford Server Court Appointed |
|---|---|---|---|
| | | Supreme Court No: | 052866 |
| Supreme Court No: | | Rep. Status: | Active |
| Phone Number(s): | | Phone Number(s): | |
| 215-686-8000 (Phone) | | 215-632-3546 (Phone) | |
| Address: | | 215-532-0684 (Other) | |
| 3 South Penn Square Philadelphia, PA 19107 | | Address: | |
| | | 52103 Delaire Landing Philadelphia, PA 19114 | |
| | | Representing: Williams, Craig | |

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 05/21/1987 | | Unknown Filer |
| Held for Court | | | |

CPCMS 9082

Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

## COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

Docket Number: CP-51-CR-0525631-1987

### CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Craig Williams

Page 7 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 01/29/1990 | | Migrated, Filer |
| Migrated Automatic Registry Entry (Disposition) Text | | | |
| 2 | 01/29/1990 | | Migrated, Filer |
| Migrated Sentence | | | |
| 3 | 01/29/1990 | | Migrated, Filer |
| Disposition Filed | | | |
| 1 | 02/05/2002 | | Migrated, Filer |
| PCRA FILED | | | |
| PCRA FILED | | | |
| 1 | 07/23/2003 | | Migrated, Filer |
| DOCKET CREATED AS OF 07/23/03 | | | |
| DOCKET CREATED AS OF 07/23/03 | | | |
| 1 | 09/15/2003 | | Migrated, Filer |
| PCRA NEXT ACT/DISP  SUFFIX B | | | |
| OLD NXT ACT DT 091003  RM 200  EVNT TYP 070  EVNT DT 072303 | | | |
| NEW NXT ACT DT 102703  RM 200  EVNT TYP 070  EVNT DT 072303 | | | |
| 1 | 11/03/2003 | | Migrated, Filer |
| PCRA NEXT ACT/DISP  SUFFIX B | | | |
| OLD NXT ACT DT 102703  RM 200  EVNT TYP 070  EVNT DT 072303 | | | |
| NEW NXT ACT DT 120903  RM 200  EVNT TYP 070  EVNT DT 072303 | | | |
| 1 | 02/23/2004 | | Migrated, Filer |
| PCRA NEXT ACT/DISP  SUFFIX B | | | |
| OLD NXT ACT DT 120903  RM 200  EVNT TYP 070  EVNT DT 072303 | | | |
| NEW NXT ACT DT 042304  RM 200  EVNT TYP 070  EVNT DT 072303 | | | |
| 1 | 04/26/2004 | | Migrated, Filer |
| PCRA NEXT ACT/DISP  SUFFIX B | | | |
| OLD NXT ACT DT 042304  RM 200  EVNT TYP 070  EVNT DT 072303 | | | |
| NEW NXT ACT DT 062304  RM 200  EVNT TYP 070  EVNT DT 072303 | | | |

Printed: 03/01/2013

CPCMS 9082

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

**Docket Number: CP-51-CR-0525631-1987**

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania
v.
Craig Williams

Page 8 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 06/29/2004 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 062304  RM 200  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 072104  RM 200  EVNT TYP 070  EVNT DT 072303

| 1 | 07/29/2004 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 072104  RM 200  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 092004  RM 200  EVNT TYP 070  EVNT DT 072303

| 1 | 10/06/2004 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 092004  RM 200  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 102104  RM 200  EVNT TYP 070  EVNT DT 072303

| 1 | 10/27/2004 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 102104  RM 200  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 110804  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 11/08/2004 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 110804  RM 1002  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 121404  RM 1002  EVNT TYP 011  EVNT DT 072303
EVNT TYP CHG FROM 070-PETITION TO BE DISMISSED - 1507 NOTICE
TO 011-PETITION TO BE DISMISSED - 1507 NOTICE

| 1 | 11/10/2004 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 121404  RM 1002  EVNT TYP 011  EVNT DT 072303
NEW NXT ACT DT 121404  RM 1002  EVNT TYP 070  EVNT DT 072303
EVNT TYP CHG FROM 011-LISTED FOR STATUS
TO 070-LISTED FOR STATUS

| 2 | 12/14/2004 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 121404  RM 1002  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 012105  RM 1002  EVNT TYP 070  EVNT DT 072303

CPCMS 9082

Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial
System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed
data, errors or omissions on those reports.  Docket Sheet information should not be used in place of a criminal history background check which can
only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record
Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

**Docket Number: CP-51-CR-0525631-1987**

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Craig Williams

Page 9 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 2 | 01/21/2005 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 012105  RM 1002  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 012705  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 01/27/2005 | | Migrated, Filer |
|---|---|---|---|

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 012705  RM 1002  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 021605  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 02/16/2005 | | Migrated, Filer |
|---|---|---|---|

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 021605  RM 1002  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 022405  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 02/24/2005 | | Migrated, Filer |
|---|---|---|---|

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 022405  RM 1002  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 052605  RM 1002  EVNT TYP 083  EVNT DT 072303
EVNT TYP CHG FROM 070-EVIDENTIARY HEARING
TO 083-EVIDENTIARY HEARING

| 1 | 03/02/2005 | | Migrated, Filer |
|---|---|---|---|

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 052605  RM 1002  EVNT TYP 083  EVNT DT 072303
NEW NXT ACT DT 052505  RM  200  EVNT TYP 070  EVNT DT 072303
EVNT TYP CHG FROM 083-LISTED FOR STATUS
TO 070-LISTED FOR STATUS

| 2 | 05/25/2005 | | Migrated, Filer |
|---|---|---|---|

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 052505  RM  200  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 052605  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 05/26/2005 | | Migrated, Filer |
|---|---|---|---|

PCRA NEXT ACT/DISP  SUFFIX B
OLD NXT ACT DT 052605  RM 1002  EVNT TYP 070  EVNT DT 072303
NEW NXT ACT DT 062905  RM 1002  EVNT TYP 070  EVNT DT 072303

Printed: 03/01/2013

CPCMS 9082

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

JA-81

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

### Court Case

Commonwealth of Pennsylvania

v.

Craig Williams

Page 10 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 2 | 06/29/2005 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 062905  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 072005  RM 1002  EVNT TYP 070  EVNT DT 072303

| | | | Migrated, Filer |
|---|---|---|---|
| 2 | 07/20/2005 | | |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 072005  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 092105  RM 1002  EVNT TYP 070  EVNT DT 072303

| | | | Migrated, Filer |
|---|---|---|---|
| 2 | 09/21/2005 | | |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 092105  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 101805  RM 1002  EVNT TYP 070  EVNT DT 072303

| | | | Migrated, Filer |
|---|---|---|---|
| 2 | 10/18/2005 | | |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 101805  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 112905  RM 1002  EVNT TYP 070  EVNT DT 072303

| | | | Migrated, Filer |
|---|---|---|---|
| 1 | 12/05/2005 | | |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 112905  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 122105  RM 200  EVNT TYP 070  EVNT DT 072303

| | | | Migrated, Filer |
|---|---|---|---|
| 1 | 01/25/2006 | | |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 122105  RM 200  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 030306  RM 1002  EVNT TYP 070  EVNT DT 072303

| | | | Migrated, Filer |
|---|---|---|---|
| 2 | 03/03/2006 | | |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 030306  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 031406  RM 1002  EVNT TYP 070  EVNT DT 072303

| | | | Migrated, Filer |
|---|---|---|---|
| 2 | 03/14/2006 | | |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 031406  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 031506  RM 1002  EVNT TYP 070  EVNT DT 072303

Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY



Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

### Court Case

Commonwealth of Pennsylvania

v.

Craig Williams

Page 11 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 2 | 03/15/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP SUFFIX B
OLD NXT ACT DT 031506 RM 1002 EVNT TYP 070 EVNT DT 072303
NEW NXT ACT DT 031606 RM 1002 EVNT TYP 070 EVNT DT 072303

| 2 | 03/16/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP SUFFIX B
OLD NXT ACT DT 031606 RM 1002 EVNT TYP 070 EVNT DT 072303
NEW NXT ACT DT 031706 RM 1002 EVNT TYP 070 EVNT DT 072303

| 2 | 03/17/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP SUFFIX B
OLD NXT ACT DT 031706 RM 1002 EVNT TYP 070 EVNT DT 072303
NEW NXT ACT DT 032006 RM 1002 EVNT TYP 070 EVNT DT 072303

| 2 | 03/20/2006 | | Migrated, Filer |

PCRA FILE MAINT. SUFFIX B
OLD NXT ACT DT 032006 RM 1002 EVNT TYP 070 EVNT DT 072303
NEW NXT ACT DT 032106 RM 1002 EVNT TYP 070 EVNT DT 072303

| 2 | 03/21/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP SUFFIX B
OLD NXT ACT DT 032106 RM 1002 EVNT TYP 070 EVNT DT 072303
NEW NXT ACT DT 041306 RM 1002 EVNT TYP 070 EVNT DT 072303

| 2 | 04/13/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP SUFFIX B
OLD NXT ACT DT 041306 RM 1002 EVNT TYP 070 EVNT DT 072303
NEW NXT ACT DT 041906 RM 1002 EVNT TYP 070 EVNT DT 072303

| 2 | 04/19/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP SUFFIX B
OLD NXT ACT DT 041906 RM 1002 EVNT TYP 070 EVNT DT 072303
NEW NXT ACT DT 042006 RM 1002 EVNT TYP 070 EVNT DT 072303

| 2 | 04/20/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP SUFFIX B
OLD NXT ACT DT 042006 RM 1002 EVNT TYP 070 EVNT DT 072303
NEW NXT ACT DT 051706 RM 1002 EVNT TYP 070 EVNT DT 072303

Printed: 03/01/2013

CPCMS 9082

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

### Court Case

Commonwealth of Pennsylvania

v.

Craig Williams

Page 12 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 2 | 05/17/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 051706  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 051806  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 05/18/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 051806  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 051906  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 05/19/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 051906  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 052506  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 05/25/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 052506  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 060106  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 06/01/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
  OLD NXT ACT DT 060106  RM 1002  EVNT TYP 070  EVNT DT 072303
  NEW NXT ACT DT 071106  RM 1002  EVNT TYP 070  EVNT DT 072303

| 2 | 07/11/2006 | | Migrated, Filer |

PCRA NEXT ACT/DISP  SUFFIX B
  DISP DATE 071106  RM 200  DISP TYPE 056
  DISP TYPE 056-PCRA PET. DENIED IN PART; GRANTED IN PART

| 3 | 07/11/2006 | | Migrated, Filer |

CRIMINAL DOCKET COMMENTS
  NOTICE OF FILING DEFENSE OBJECTIONS FILED

| D49/1 | 07/12/2006 | | Unknown Filer |

Notice of Appeal to the Superior Court

CPCMS 9082

Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet Information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

DOCKET

**Docket Number: CP-51-CR-0525631-1987**

## CRIMINAL DOCKET

### Court Case

Commonwealth of Pennsylvania

v.

Craig Williams

Page 13 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 07/14/2006 | | Migrated, Filer |

APPEAL CASE FILED SUFFIX C
  NEW ENTRY: 07/14/06
  APPEAL JUDGE: JOHN POSERINA, JR.
  DATE APPEAL ORDERED: 07/11/06
  TYPE APPEAL:
  PCRA DISMISSED-CAPITAL CASE
  APPEAL MOST SERIOUS CHARGE
  11000 MURDER-1ST DEGREE
  LEAD ATTORNEY: 00002 A BAR FOUN D THE PHILADELPHI
  SOURCE: PRO BONO
  DATE FILED: 07/12/06
  APPEAL TO: CAPITAL APPEAL
  DOCKET PAGE: 0712
  FILE STATUS: FILE LOCATED
  TYPE PAYMENT: PRO BONO
  FILED BY: COUNSEL ACTING PRO BONO

| 1 | 07/27/2006 | | Migrated, Filer |
|---|---|---|---|

APPL FILE MAINT SUFFIX C
  FILE PREPARED DATE CHANGED FROM 00/00/00
  TO 07/19/06

| D50/1 | 11/29/2006 | | Poserina, John J. Jr. |
|---|---|---|---|

Opinion

| D51/1 | 04/30/2007 | | Williams, Craig |
|---|---|---|---|

Motion to Withdraw Pro Se Motion

| D52/1 | 05/02/2007 | | Supreme Court of Pennsylvania - Eastern District |
|---|---|---|---|

Order for remand for Grazier Hearing

| D53/1 | 05/14/2007 | | Court of Common Pleas - Philadelphia County |
|---|---|---|---|

Entry of Appearance
  Teri B. Himebaugh, Esq. enters appearance as counsel.

| D54/1 | 05/15/2007 | | Poserina, John J. Jr. |
|---|---|---|---|

Entry of Appearance 5/14/07 - Court accepts counsel's appearance

Printed: 03/01/2013

CPCMS 9082

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania                                              Page 14 of 17

v.

Craig Williams

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 05/18/2007 | | Court of Common Pleas - Philadelphia County |

Certificate and Transmittal of Record to Appellate Court

| D55/1 | 06/14/2007 | | Poserina, John J. Jr. |

Order - Capital Defender's Office removed.
  Deft. has retained Terry Himebaugh, Esq. as counsel.

| 1 | 06/20/2007 | | Supreme Court of Pennsylvania - Eastern District |

Remand for Grazier Hearing

| 1 | 09/18/2007 | | Court of Common Pleas - Philadelphia County |

Transcript of Proceedings Filed
  Notes of Testimony: 5/13/87, June 8, 9, 10 (2 vol.), 13, 15, 16, 17, 1988, 1/29/90, 11/13/97, 5/30/02, (2) env.
  exhibits

| 2 | 09/18/2007 | | Court of Common Pleas - Philadelphia County |

Certificate and Transmittal of Record to Appellate Court

| 1 | 07/12/2009 | | Court of Common Pleas - Philadelphia County |

Delinquency Notice Filed - 1016 Days Overdue

| 1 | 10/02/2009 | | Supreme Court of Pennsylvania - Eastern District |

Affirmed - Supreme Court

| 1 | 12/15/2011 | | Lerner, Benjamin |

Defense Attorney to be Appointed
  ADA: D. Watson-Stokes    Def. Atty:    Steno: Kris Vargas    Court Clerk: Kathryn Morris

  Status of counsel. The Court orders Rule 801 certified counsel to be appointed for the above defendant's case.
  NCD: 1/12/2012 room 1105 (NO QUARTER SESSION FILE)

  By the Court,

  _____ J

        Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial
  System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed
  data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can
    only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record
                    Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY



Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Craig Williams

Page 15 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 2 | 12/21/2011 | | Stiles, Michael R. |
| Attorney Relieved | | | |
| Counsel Permitted to Withdraw by the Court | | | |
| 1 | 12/27/2011 | | Smarro, Janis |
| Entry of Appearance | | | |
| 2 | 12/27/2011 | | |
| Appointment Notice | | | |
| 1 | 12/29/2011 | | Stiles, Michael R. |
| Attorney Relieved | | | |
| Appointed in Error | | | |
| 2 | 12/29/2011 | | Server, Gary Sanford |
| Entry of Appearance | | | |
| 3 | 12/29/2011 | | |
| Appointment Notice | | | |
| 2 | 01/12/2012 | | Commonwealth of Pennsylvania |

Motion for Continuance

ADA: D. Watson-Stokes   Def. Atty: Gary Server   Steno: Kris Vargas   Court Clerk: Kathryn Morris

Defense request for further discussions with the Commonwealth. Time ruled excludable. NCD: 2/9/2012 room 1105 (NO QUARTER SESSION FILE)

By the Court,

_____ J

| 2 | 02/09/2012 | | Commonwealth of Pennsylvania |

Motion for Continuance

ADA: D. Watson-Stokes   Def. Atty: Gary Srver   Steno: Tina Masi   Court Clerk: Kathryn Morris

Joint request for further discussions. Time ruled excludable by agreement. NCD: 3/15/2012 room 1105

By the Court,

_____ J

CPCMS 9082

Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

JA-87

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

**DOCKET**



Docket Number: CP-51-CR-0525631-1987

## CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Craig Williams

Page 16 of 17

**ENTRIES**

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 03/15/2012 | | Commonwealth of Pennsylvania |

Motion for Continuance Defense Request

ADA: D. Watson-Stokes    Def. Atty: Gary Server    Steno: Lisa Postiglione    Court Clerk: Kathryn Morris

Defense attorney request to correspond with his client. The Commonwealth has removed the death penalty. Time ruled excludable. NCD: 4/4/2012 room 1105

By the Court,

_____ J

| 4 | 04/04/2012 | | Court of Common Pleas - Philadelphia County |

Hearing Notice

| 5 | 04/04/2012 | | Commonwealth of Pennsylvania |

Motion for Continuance

ADA: D. Watson-Stokes    Def. Atty: Gary Server    Steno: Lisa Postiglione    Court Clerk: Kathryn Morris

Video sentencing scheduled. NCD: 4/16/2012 room 1105 12:30 p.m.

| 4 | 04/10/2012 | | Court of Common Pleas - Philadelphia County |

Hearing Notice

| 1 | 05/01/2012 | | Lerner, Benjamin |

Order - Sentence/Penalty Imposed

Sentencing. Due to appeal, the death penalty has been removed. The defendant is re-sentenced to life without parole on first degree murder. The other charges sentences and court costs are to remain the same. The defendant is to be taken off of death row forthwith and placed in general population. The defendant is to recieve a copy of today's transcripts. - ADA: D. Watson-Stokes/ Def. Atty: Gary Server/ DRT: Carlos Higgins/ Court Clerk: Kathryn Morris (NO QUARTER SESSION FILE)

| 1 | 09/03/2012 | | Williams, Craig |

Petition for Writ of Habeas Corpus

| 1 | 10/18/2012 | | Williams, Craig |

Return Case From Collection Agency - Court Request/Order

| 1 | 11/15/2012 | | Williams, Craig |

Motion for Appointment of Private Investigator

CPCMS 9082

Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY



**Docket Number: CP-51-CR-0525631-1987**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Craig Williams

Page 17 of 17

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|

| Payment Plan No | Payment Plan Freq. | Next Due Date | Active | Overdue Amt |
|---|---|---|---|---|
| Responsible Participant | | | Suspended | Next Due Amt |
| 51-2006-P100383635 | Monthly | 09/30/2006 | Yes | $115.00 |
| | | | No | $25.00 |

| Payment Plan History: | Receipt Date | Payor Name | Participant Role | Amount |
|---|---|---|---|---|

| | | | | Total of Last Payment: | |
|---|---|---|---|---|---|
| Last Payment Date: | | | | | |
| **Williams, Craig** | Assessment | Payments | Adjustments | Non Monetary | Total |
| Defendant | | | | Payments | |
| **Costs/Fees** | | | | | |
| County Court Cost (Act 204 of 1976) | $100.00 | $0.00 | $0.00 | $0.00 | $100.00 |
| Domestic Violence Compensation (Act 44 of 1988) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Judicial Computer Project | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| Collection Fee (Philadelphia) | $19.35 | $0.00 | -$19.35 | $0.00 | $0.00 |
| Costs/Fees Totals: | $134.35 | $0.00 | -$19.35 | $0.00 | $115.00 |
| Grand Totals: | $134.35 | $0.00 | -$19.35 | $0.00 | $115.00 |

** - Indicates assessment is subrogated

CPCMS 9082                                                                                     Printed: 03/01/2013

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial
System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed
data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can
only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record
Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# EXHIBIT 2

6.5.8, Capital Case Procedures
Manual Section 1 – Phase I
Inmates

*6.5.8, Capital Case Procedures Manual*
*Section 1 – Phase I Inmates*

## S. Modification of Sentence

1. In the event that an order is received modifying the sentence of a Capital Case inmate to life imprisonment due to a re-sentencing proceeding held as the result of an appeal or Post Conviction Relief Act, or as the result of a commutation, the facility Records Supervisor must determine whether the order is valid and whether the District Attorney intends to appeal the order.

2. If the District Attorney intends to appeal, the inmate shall not be moved from the Capital Case unit until the appeal is resolved. However, the inmate may be moved from the Capital Case Unit, if the District Attorney does not file an appeal within 30 days.

3. If the District Attorney does not intend to appeal and if the inmate does not remain subject to an execution sentence as the result of a prosecution other than the sentence modified in the order, the inmate may be moved from the Capital Case Unit.

4. Any questions concerning moving a Capital Case inmate from a Capital Case Unit shall be referred to the appropriate Regional Deputy Secretary.

# EXHIBIT 3

Administrative Custody
Procedures DC-ADM 802
Effective Date February 12, 2007



**POLICY STATEMENT**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | Policy Number: |
|---|---|
| **Administrative Custody Procedures** | **DC-ADM 802** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **January 12, 2007** | *JeBeard* <br> **Jeffrey A. Beard, Ph.D.** | **February 12, 2007** |

## I.   AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.   PURPOSE

This document establishes policy and procedure for the operation of housing units used to confine inmates in Administrative Custody status.

## III.   APPLICABILITY

This policy is applicable to each facility operating a housing unit used to confine an inmate in Administrative Custody status.

## IV.   DEFINITIONS

### A.  Administrative Custody (AC)

A status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided for in general population.

### B.  Department

The Pennsylvania Department of Corrections.

**DC-ADM 802, Administrative Custody Procedures**                                  *Page 2*

### C. Disciplinary Custody

The maximum restrictive status of confinement to which an inmate found guilty of a Class I misconduct may be committed.

### D. Facility Manager

The Superintendent of a State Correctional Facility, State Regional Correctional Facility, Commander of a Motivational Boot Camp, Regional Director of a Community Corrections Center, and/or the Director of the Training Academy.

### E. General Population

A status of confinement for an inmate who is not in Administrative or Disciplinary Custody or other type of special housing.

### F. Pre-Hearing Confinement

A temporary administrative status of confinement in the inmate's general population cell or in a Security Level 5 Housing Unit, pending the outcome of a misconduct hearing.

### G. Program Review Committee (PRC)

A committee consisting of three staff members who conduct Administrative and Disciplinary Custody Hearings, periodic reviews, make decisions regarding continued confinement in a Security Level 5 Housing Unit, and hear all first level appeals of misconducts. The committee shall consist of a Deputy Superintendent (who shall serve as the chairperson), a Commissioned Officer, and one staff member from the following classifications, Corrections Classification and Program Manager (CCPM), Unit Manager, School Principal, Alcohol and Other Drugs Treatment Specialist Supervisor or Inmate Records Officer Supervisor. The Facility Manager may designate other staff as committee members; however, if such designations are made, they must be in writing and the Facility Manager must maintain a list of all designees. Whenever a PRC is convened, at least one member of the committee must be a staff member who is not directly involved in the administration of the Security Level 5 Housing Unit in which the inmate is currently housed.

### H. Protective Custody (PC)

A category of Administrative Custody used for an inmate requiring protection from other inmates or for reasons not caused by his/her own behavior.

### I. Restricted Housing Unit (RHU)

An area or group of cells for an inmate assigned to DC or AC status.

*DC-ADM 802, Administrative Custody Procedures*                    **Page 3**

### J. Restricted Release List

A list of inmates who are restricted from release from AC status without the prior approval of the Secretary/designee. An inmate may be placed on this list when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern.

### K. Security Level 5 Housing

A housing unit, area, or group of cells designated as an RHU, SMU, and/or Capital Case Unit.

### L. Special Housing Unit

A housing unit, often within a Security Level 5 unit, designated for a specialized program. Examples of Special Housing Units include a Special Management Unit (SMU) and Security Special Needs Unit (SSNU).

### M. Special Management Unit (SMU)

Special units within designated Department facilities designed to safely and humanely handle an inmate whose behavior presents a serious threat to the safety and security of the facility, staff, other inmates, or him/herself.

### N. Special Needs Unit (SNU)

A housing unit established to provide a safe and secure setting and specialized treatment services for an inmate identified as being unable to function in a general population-housing unit. An inmate in this category may include someone diagnosed as mentally ill, emotionally unstable, mentally retarded, and physically or developmentally challenged. Placement does not require the mental health commitment process.

### O. Unit Management Team

The individuals assigned to operate a housing unit with the responsibilities for security, risk management, conducting informal resolutions of misconducts, and program delivery.

### P. Unit Manager

The individual who is responsible for the supervision of all members of the Unit Management Team and the delivery of security and program services.

*DC-ADM 802, Administrative Custody Procedures*                                        **Page 4**

## V.  POLICY

It is the policy of the Department to place any inmate in AC status whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility.[1]

## VI.  PROCEDURES

### A.  Placement in AC Status

1.  Any general population inmate may be assigned AC status and placed in a Security Level 5 Housing Unit by order of the Shift Commander for the following reasons(s):[2]

   a.  the inmate is in danger by/from some person(s) in the facility and cannot be protected by alternate measures;[3]

   b.  placement in general population would endanger the inmate's safety or welfare when it is not possible to protect him/her by other means;[4]

   c.  the inmate is a danger to himself/herself or others;[5]

   d.  the inmate is suspected of being or is the instigator of a disturbance;

   e.  the inmate would pose an escape risk in a less secure status;

   f.  the inmate has been charged with, or is under investigation for a violation of facility rules and there is a need for increased control pending disposition of charges or completion of the investigation;

   g.  the inmate has requested and been granted self-confinement;

   h.  the inmate is being held temporarily for another authority and is not classified for the general population of the holding facility;

   i.  no records and/or essential information are available to determine the inmate's custody level or housing needs; and/or

   j.  the inmate has completed a DC sanction but one or more of the above reasons exist.

---

[1] 4-4249
[2] 4-4404
[3] 4-4281
[4] 4-4281
[5] 4-4250, 4-4281

*DC-ADM 802, Administrative Custody Procedures*                    **Page 5**

2. The following factors shall be considered by the PRC when reviewing an inmate for AC status placement as self-confinement:

   a. that verifiable and documented justification exists for placement;

   b. that the inmate is an obvious target for other inmates, consistent with the definition of Protective Custody; and

   c. that staff have made every effort (documented) to keep the inmate safely housed in general population.

3. An inmate who has completed a DC sanction imposed in accordance with Department policy **DC-ADM 801, "Inmate Discipline"** may be placed in AC status by order of the PRC for any of the reasons identified in **Section VI.A.2.;** however, a hearing shall be held as described in **Section VI.B.**

4. Whenever practical, written notice of the reasons for AC placement is given to the inmate prior to placement, but in all cases within 24 hours after placement. The written notice shall be prepared on the misconduct form **DC-141, Part 1** by indicating "Other."[6]

5. If the inmate has a mental illness, the PRC should explore the feasibility of placing him/her into a Special Needs Unit (SNU) as an alternative, as long as the inmate's safety is not jeopardized. If the inmate's safety cannot be reasonably assured in any status other than AC, then the case should be referred and appropriate mental health services must be provided while the inmate remains in AC status.

6. When an inmate is placed in AC status the Facility Manager/designee shall review the placement within 72 hours.[7]

7. The Facility Manager/designee may request that an inmate be placed on the Restricted Release List when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern. The Secretary/designee must approve placing the inmate in this status.

   a. Criteria for placement of an inmate on the Restricted Release List includes, but is not limited to, the following:

      (1) assaultive history against staff;

      (2) assaultive history against inmate(s);

      (3) sexual assault history;

---

[6] 4-4404
[7] 4-4250

    (4)  escape history, or serious escape attempt;

    (5)  threat to the orderly operation of a facility (i.e., attempting to organize inmates, demonstrated involvement in a Security Threat Group that poses a risk to the security of the facility, etc.);

    (6)  SMU graduate who remains a threat; and/or

    (7)  SMU failure.

b.  The Facility Manager/designee will provide written rationale supporting the request that an inmate be placed on the Restricted Release List, in a memorandum to the Regional Deputy Secretary.

c.  The Regional Deputy will review the recommendation, indicate his/her approval or disapproval and forward it to the Secretary/designee for review. The Secretary/designee will make the final determination regarding the inmate's placement on the Restricted Release List.

d.  When an inmate is placed on the Restricted Release List, the Counselor will make a notation in the Unit Management System on DOCINFO, under the "Security Concerns" section. The date and the reason the inmate was assigned to the Restricted Release List will be included.

e.  *Release of an inmate on the Restricted Release List shall be in accordance with Section H.4. below.*

f.  If an H code has not already been assigned, the counselor will initiate the **DC-46, Vote Sheet** for this purpose, in accordance with Department policy **11.2.1, "Reception and Classification," Section 3 – Pennsylvania Additive Classification Tool (PACT)**.

## B. Administrative Hearing

An Administrative Hearing shall be conducted as follows:

1.  The hearing shall be conducted by the PRC.

2.  The reasons(s) for the inmate's AC confinement must be explained to the inmate.

3.  When the inmate is in AC status as pre-hearing confinement on a misconduct charge, an Administrative Hearing will not be held, provided a hearing on the misconduct charge is held within seven workdays, excluding weekends and State holidays, and the misconduct charge is disposed of at that hearing. An inmate request for a continuance of the disciplinary hearing is an automatic waiver of the hearing on the reason(s) for pre-hearing confinement. In all other cases, except as noted in **Section B.4.** below. The hearing shall be scheduled within seven workdays, excluding weekends and State holidays, after AC placement.

**DC-ADM 802, Administrative Custody Procedures**                                **Page 7**

4. Confinement in AC status for investigative purposes shall not exceed 15-calendar days. The Facility Manager/designee may approve one 15-calendar day continuation of confinement, if the investigation has not been completed. The reason for the continuation shall be documented and a copy provided to the inmate. Following the 30-calendar day period, if the inmate remains in AC status, he/she must be charged with a misconduct and a hearing held within seven workdays, excluding weekends and State holidays. If the investigation indicates that a security concern, as outlined in **Section VI.A.1.** exists, but the evidence is not sufficient for a misconduct, the inmate may be scheduled for a hearing to determine if further AC placement is necessary, upon expiration of the 30-calendar days.

5. The rationale for the AC placement shall be read and explained to the inmate.

6. The inmate shall be permitted to respond to the rationale for AC placement. The inmate may tell his/her version orally or submit it in writing. A PRC committee member shall write a summary of any relevant oral statement by the inmate.

7. The PRC's decision shall be based on some evidence as to whether there is a valid security reason to confine the inmate in AC as defined in **Section VI.A.2.** The evidence may include the counselor's reports, Psychiatric/Psychological information, staff recommendations, and/or investigative reports.

8. A written summary of the hearing shall be prepared on the **DC-141, Part 3**. It shall include the reasons(s) relied upon by the PRC to reach its decision. A copy of the written summary shall be given to the inmate. The inmate may submit a concise summary of the hearing, which shall be made a permanent part of the file.

9. If, in the opinion of the PRC, the inmate is physically or mentally unable to attend or participate, the hearing shall be postponed until the inmate is able to attend and participate. The decision to postpone a hearing shall be documented on the **DC-141, Part 3** and shall be made close to the time the hearing would have been held. There is no appeal from the decision to postpone the hearing. If the inmate is able to attend and refuses, the hearing will be held in absentia. If the inmate becomes disruptive in the hearing or refuses to follow instructions, he/she shall be removed and the hearing conducted without the inmate being present.

**C. Waiver**

1. An inmate may voluntarily waive the hearing described in **Section VI.B.** at any time prior to the hearing's completion. The inmate may also waive the written notice requirements and any time limitations relating to the hearing or the service of notice.

2. All waivers shall be in writing and shall be signed and dated by the inmate.

**DC-ADM 802, Administrative Custody Procedures**                                    **Page 8**

3. When an inmate requests self-confinement in AC status, such request shall be deemed a waiver of all procedures described in this directive except periodic PRC review. Only written notice of the reason for the AC placement is necessary.

4. An inmate's refusal to attend a hearing shall be deemed a waiver of the proceeding. The refusal shall be documented on the **DC-141, Part 3**. The inmate may not appeal the results of a hearing he/she refused to attend.

## D. Appeals

1. An inmate may appeal the decision of the PRC concerning his/her initial confinement in AC to the Facility Manager/designee within two days of the completion of the hearing. The appeal must be in writing. The decision of the Facility Manager/designee will be forwarded to the inmate within 10 days of the receipt of the appeal.

2. An inmate may appeal the initial decision of the Facility Manager/designee to continue him/her in AC confinement to the Office of the Chief Hearing Examiner. The appeal must be addressed as follows:

> **Chief Hearing Examiner**
> **Department of Corrections**
> **1451 N. Market Street**
> **Elizabethtown, PA 17022**

3. The Office of the Chief Hearing Examiner will review the record of the hearing and all other relevant documents and rule on the appeal within two workdays after its receipt.

4. In every case where the action of the PRC or the Facility Manager/designee is reversed, the Office of the Chief Hearing Examiner shall prepare a letter to the inmate and a memorandum to the Facility Manager/designee. These will be forwarded to the appropriate Regional Deputy Secretary for review and signature.

5. If the PRC decides to continue the inmate in AC following the 90-day review, the inmate may appeal his/her continuation as outlined in **Section VI.D.1.** through **4.**

6. The inmate's right to appeal terminates when he/she is released from AC.

## E. Periodic Reviews

1. The PRC shall review the status of each inmate in AC status every seven days for the first two months.[8]

2. Each inmate in AC status shall be seen weekly by his/her counselor.

---

[8] 4-4253

*DC-ADM 802, Administrative Custody Procedures*                                           **Page 9**

3. The Unit Management Team shall review the status of every inmate in AC after 30 days and every 30 days thereafter.[9]

4. The counselor's weekly interviews and the Unit Management Team's monthly reviews are documented in the **DC-14, Cumulative Adjustment Record**.

5. The PRC will interview every inmate in AC status every 90 days unless the Unit Management Team recommends an earlier review. The PRC's decision to continue the inmate in AC status or release him/her to population is documented on a **DC-141, Part 4**, with a copy provided to the inmate.

6. Whenever an inmate is being recommended for transfer to a Special Housing Unit (SMU, SSNU), the PRC shall review the recommendation with the inmate and inform him/her of the reason(s) for the transfer recommendation. The inmate will be given the opportunity to respond to the rationale given and object to his/her placement in a Special Housing Unit, if he/she so desires. The recommendation shall be documented on the **DC-141, Part 4**, with a copy to the inmate. The inmate may appeal the recommendation for Special Housing Unit transfer to the Facility Manager/designee and Central Office, as outlined in **Section VI.D.1.** through **6.**

7. A qualified psychologist or psychiatrist shall personally interview and conduct an assessment of any inmate remaining in AC status for more than 30 calendar days. If the inmate's confinement continues for an extended period, a mental health assessment will be completed at least every 90 calendar days.[10]

F. **AC Housing Status**[11]

1. AC is a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection that is provided for in general population. An inmate confined in this status shall not have the privileges available in lower security level housing. An AC inmate who is assigned to a Special Housing Unit shall have privileges as defined within the Unit's handbook, and according to the program level the inmate has attained. The following conditions apply to an inmate in AC status in a regular Level 5 Housing Unit:

   a. all tobacco products are prohibited;

   b. there are no radio, television, or telephone calls (except emergency or legal telephone calls) in accordance with Department policies **DC-ADM 818,** "**Automated Inmate Telephone System,**" and 6.5.1, "**Administration of Security Level 5 Housing Units.**"

---

[9] 4-4253
[10] 4-4256
[11] 4-4249

   c.   personal property, commissary, written materials, and prescribed medication are permitted in accordance with Department policy **6.5.1.**

   d.   all visits are non-contact in accordance with Department policies **DC-ADM 812, "Inmate Visiting Privileges"** and **6.5.1.**

   e.   Any combination of personal property that will fit into one standard-size records-center box may be maintained in the cell. Personal property includes:

      (1)   written materials in accordance with **DC-ADM 803, "Inmate Mail and Incoming Publications;"**

      (2)   one newspaper (one-for-one exchanges are permitted for newly received editions); and[12]

      (3)   10 magazines (one-for-one exchanges are permitted for newly received publications).[13]

   f.   An inmate shall be permitted to exchange legal materials from his/her cell with stored legal materials once every 30 days. The PRC may authorize more frequent exchanges based upon a demonstrated need for additional exchanges for active litigation. Such exchanges, however, may not exceed one per week.

   g.   When an inmate is schedule for transfer to another facility, his/her property shall be handled in accordance with **DC-ADM 815, "Personal Property, Basic/State Issued items and Commissary/Outside Purchases."**

   h.   An inmate shall be provided access to the facility law library in accordance with Department policy **DC-ADM 007, "Access to Provided Legal Services."**

   i.   Leisure reading material may be requested from the library on a weekly basis.

   j.   A jumpsuit, footwear, and basic issue toilet articles shall be provided. Two sets of personal undergarments are permitted. No other personal apparel is permitted. Outerwear will be provided as needed.

   k.   Exercise shall be offered one hour per day, five days per week.[14]

   l.   The opportunity to shower and shave shall be offered three times per week.

2.   The PRC or Security Level 5 Unit Management Team may approve additional privileges based on individual needs, safety and security and the behavioral progress of the inmate.

---

[12] 4-4269
[13] 4-4269
[14] 4-4270

*DC-ADM 802, Administrative Custody Procedures*                    **Page 11**

3. Additional privileges may include:

   a. an increase in visiting privileges;

   b. a radio;

   c. a television;

   d. an increase in telephone calls;

   e. increased commissary;

   f. a work assignment;

   g. any other general population privileges except freedom to move about the facility and freedom to engage in programs with the general population; and

   h. at the PRC's discretion, an inmate in long term AC status may be eligible for the General Labor Pool (GLP) compensation.

      (1) The inmate must be indigent in accordance with Department policy **DC-ADM 803**.

      (2) The inmate must not be housed in the SMU. Compensation for an inmate housed in the SMU is in accordance with Department policy **6.5.1**.

      (3) The inmate must comply with the GLP requirements in accordance with Department policy **DC-ADM 816, "Inmate Compensation."** He/she must maintain an acceptable level of personal hygiene, the cleanliness of his/her living quarters and accept work assignments within the housing unit. The inmate must follow all rules, participate in recommended programs, and be willing to accept any employment or school assignment offered.

      (4) The GLP compensation rate for an AC status inmate shall be $.50 *a day*. An inmate who is receiving the GLP compensation rate of $.72 *a day* as of the implementation date of this policy will continue to receive that rate. However, should he/she lose GLP status due to a misconduct or Unit Team action, he/she will receive the $.50 compensation rate if/when the PRC reinstates him/her to GLP status.

4. Any additional privilege(s), if permitted, may also be revoked by the PRC or Security Level 5 Unit Management Team based on a change in individual need, safety and security, or inappropriate behavior of the inmate.

*DC-ADM 802, Administrative Custody Procedures*                    *Page 12*

## G. Program Considerations[15]

An inmate housed in AC status should be provided access to programs and services that include, but are not limited to:

1. educational services;

2. commissary (in accordance with department policy **DC-ADM 815** and a commissary list approved by the PRC);

3. library services;

4. casework, counseling, and diagnostic and classification services;

5. religious guidance in accordance with Department policy **DC-ADM 819, "Religious Activities;"** and

6. recreation.

## H. Release from AC Status

1. The Unit Management Team may recommend that PRC release an inmate from AC status.[16]

2. With the exception of *a Capital Case inmate or* an inmate on the Restricted Release List, the Facility Manager/designee or the PRC may release an inmate from AC status to general population at any time.[17]

3. Certain factors shall be evaluated in making a decision to continue or release an inmate from AC status:[18]

   a. length of time in RHU;

   b. number, type, and frequency of misconducts;

   c. continued public or facility risk;

   d. safety of the inmate, other inmates, and staff;

   e. the inmate's behavior while in AC status, including sanitation, personal hygiene/grooming, response to authority and other inmates, and to verbal and written orders; and

---

[15] 4-4273
[16] 4-4254
[17] 4-4254
[18] 4-4254

**DC-ADM 802, Administrative Custody Procedures**                    *Page 13*

f.  recommendation of the unit and treatment staff.

4.  An inmate identified on the Restricted Release List may not be released from a Level 5 Housing Unit or transferred to another facility without the written approval of the Secretary/designee.

   a.  The PRC may make a recommendation to the Facility Manager/designee if is it believed that an inmate on the Restricted Release List could be safely released to the general population.

   b.  The Facility Manager/designee must provide rationale for recommending the release of the inmate in a memorandum to the Regional Deputy Secretary.

   c.  If the Regional Deputy Secretary disapproves the release of the inmate, the Facility Manager/designee will be advised and the recommendation will not be forwarded to the Secretary/designee.

   d.  If the Regional Deputy Secretary approves the release, he/she will forward the recommendation to the Secretary/designee.

   e.  The Secretary/designee will make the final decision whether or not to release an inmate on the Restricted Release List to general population.

   f.  When an inmate is removed from the Restricted Release List, the Counselor will make a notation in the Unit Management System on DOCINFO, under the "Security Concerns" section. The date and the reason the inmate was removed from the Restricted Release List will be included.

5.  The PRC or the Facility Manager/designee may release an inmate from PC to general population at any time when the rationale used for placing the inmate in PC status is no longer valid. The PRC or the Facility Manager/designee shall document the reasons for the release of the inmate from PC on a **DC-141, Part 4.**

6.  If the inmate's release from AC status involves a transfer from the facility, the following procedures are to be followed:

   a.  The Facility Manager/designee shall make such a recommendation to the Director, Bureau of Inmate Services (BIS) via a transfer request. The transfer rationale should include a recommendation regarding which facility, or other jurisdiction, would be best suited to house the inmate. The rationale should also include programming needs, as well as continuing security concerns.

   b.  The transfer committee will review the referral and provide a recommendation to the respective Regional Deputy Secretary.

   c.  The Regional Deputy Secretary shall make the final decision regarding the release of the inmate from AC status for protection and, if the transfer is approved, shall decide the facility to which the inmate will be transferred.

*DC-ADM 802, Administrative Custody Procedures*                    **Page 14**

## VII. SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary/designee may suspend any provision or section of this policy, for a specific period.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department.

## IX. RELEASE OF INFORMATION AND DISTRIBUTION OF POLICY

### A. Release of Information

1. Policy

   This policy document is public information and may be released upon request.

2. Procedure Manual (if applicable)

   The procedures manual for this policy is not public information and shall not be released in its entirety or in part, without the prior approval of the Secretary/designee. This manual or parts thereof, may be released to any Department employee on an as needed basis.

### B. Distribution of Policy

1. General Distribution

   The Department's policy and procedures manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary/designee.

2. Distribution to Staff

   It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

*DC-ADM 802, Administrative Custody Procedures*                                  **Page 15**

**X.    SUPERSEDED POLICY AND CROSS REFERENCE**

**A. Superseded Policy**

1. Department Policy

   a. DC-ADM 802, Administrative Custody Procedures, issued March 8, 2004, by Secretary Jeffrey A. Beard, Ph.D.
   b. DC-ADM 802-1, Administrative Custody Procedures, issued May 6, 2005, by Secretary Jeffrey A. Beard, Ph.D.
   c. DC-ADM 802-2, Administrative Custody Procedures, issued July 8, 2005, by Secretary Jeffrey A. Beard, Ph.D.
   d. DC-ADM 802-3, Administrative Custody Procedures, issued September 1, 2006, by Secretary Jeffrey A. Beard, Ph.D.

2. Facility Policy and Procedures

   This document supersedes all facility policy and procedures on this subject.

**B. Cross References**

1. Administrative Manuals

   a.    DC-ADM 007, Access to Provided Legal Services
   b.    DC-ADM 801, Inmate Discipline
   c.    DC-ADM 803, Inmate Mail and Incoming Publications
   d.    DC-ADM 812, Inmate Visiting Privileges
   e.    DC-ADM 815, Personal Property, Basic/State Issued Items and Commissary/Outside Purchases
   f.    DC-ADM 816, Inmate Compensation
   g.    DC-ADM 818, Automated Inmate Telephone System
   h.    DC-ADM 819, Religious Activities
   i.    6.5.1, Administration of Security Level 5 Housing Units
   j.    6.5.8, Capital Case Administration

2. Accreditation Standards

   a. Administration of Correctional Agencies: None

   b. Adult Correctional Institutions: 4-4249, 4-4250, 4-4253, 4-4254, 4-4256, 4-4269, 4-4270, 4-4273, 4-4281, 4-4404

   c. Adult Community Residential Services: None

   d. Adult Correctional Boot Camp Programs: None

   e. Correctional Training Academies: None



| | |
|---|---|
| **POLICY STATEMENT**<br>Commonwealth of Pennsylvania • Department of Corrections | |

| Policy Subject: | Policy Number: |
|---|---|
| **Administrative Custody Procedures** | **DC-ADM 802** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **June 1, 2011** | **Signature on File**<br><br>**John E. Wetzel** | **June 7, 2011** |

## I. AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. APPLICABILITY

This policy is applicable to all facilities operated under the jurisdiction of, or conducting business with the Department of Corrections.

## III. POLICY

It is the policy of the Department to place an inmate in AC status whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility.[1]

## IV. PROCEDURES

All applicable procedures are contained in the procedures manual that accompanies this policy document.

---

[1] 4-4249

## V.  SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary/designee may suspend any provision or section of this policy for a specific period.

## VI.  RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual.  This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## VII.  RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A.  Release of Information

1. Policy

   This policy document is public information and may be released upon request.

2. Confidential Procedures (if applicable)

   Confidential procedures for this document, if any, are not public information and may not be released in its entirety or in part, without the approval of the Secretary of Corrections/designee. Confidential procedures may be released to any Department of Corrections employee on an as needed basis.

### B.  Distribution of Policy

1. General Distribution

   The Department of Corrections' policy and procedures shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis.  Distribution of confidential procedures to other individuals and/or agencies is subject to the approval of the Secretary of Corrections/designee.

2. Distribution to Staff

   It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures either in hard copy or via email, whichever is most appropriate.

*DC-ADM 802, Administrative Custody Procedures Policy*                                   **Page 3**

## VIII. SUPERSEDED POLICY AND CROSS REFERENCE

### A. Superseded Policy

1. Department Policy

   DC-ADM 802, Administrative Custody Procedures, issued May 14, 2008 by former Secretary Jeffrey A. Beard, Ph.D.

2. Facility Policy and Procedures

   This document supersedes all facility policy and procedures on this subject.

### B. Cross Reference(s)

1. Administrative Manuals

   a. DC-ADM 007, Access to Provided Legal Services

   b. DC-ADM 801, Inmate Discipline

   c. DC-ADM 803, Inmate Mail and Incoming Publications

   d. DC-ADM 812, Inmate Visiting Privileges

   e. DC-ADM 815, Personal Property, Basic/State Issued Items and Commissary/Outside Purchases

   f. DC-ADM 816, Inmate Compensation

   g. DC-ADM 818, Automated Inmate Telephone System

   h. DC-ADM 819, Religious Activities

   i. 6.5.1, Administration of Security level 5 Housing Unit

   j. 6.5.8, Capital Case Administration

2. ACA Standards

   a. Administration of Correctional Agencies: None

   b. Adult Correctional Institutions: 4-4249, 4-4250, 4-4253, 4-4254, 4-4256, 4-4269, 4-4270, 4-4273, 4-4281, 4-4404

   c. Adult Community Residential Services: None

   d. Correctional Training Academies: None



### PROCEDURES MANUAL
### Commonwealth of Pennsylvania • Department of Corrections

| Policy Subject: | Policy Number: |
|---|---|
| Administrative Custody Procedures | DC-ADM 802 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| June 1, 2011 | Signature on File | June 7, 2011 |
|  | John E. Wetzel |  |

Release of Information:

**Policy Document:** This policy document is public information and may be released upon request.

**Procedures Manual:** The procedures manual for this policy may be released in its entirety or in part, with the prior approval of the Secretary/designee. Unless prior approval of the Secretary/designee has been obtained, this manual or parts thereof may be released to any Department employee on an as needed basis only.

*DC-ADM 802, Administrative Custody Procedures Manual*
*Table of Contents*

### Section 1 – Placement in Administrative Custody Status

A. General ........................................................................................................... 1-1
B. Restricted Release List Placement............................................................... 1-2

### Section 2 – Administrative Hearings

A. General ........................................................................................................... 2-1
B. Waivers ........................................................................................................... 2-2
C. Appeals ........................................................................................................... 2-2
D. Periodic Review ............................................................................................. 2-3

### Section 3 – AC Housing Status

A. General ........................................................................................................... 3-1
B. Program Considerations................................................................................ 3-3

### Section 4 – Release from Administrative Custody Status

A. General ........................................................................................................... 4-1
B. Restricted Release List ................................................................................. 4-2

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 1 – Placement in Administrative Custody Status*

## Section 1 – Placement in Administrative Custody Status

### A. General

1. A general population inmate may be assigned Administrative Custody (AC) status and placed in a Security Level (SL) 5 Housing Unit, including a Psychiatric Observation Cell, by order of the Shift Commander and/or by order of a psychiatrist or a Certified Registered Nurse Practitioner – Psychiatric Services (PCRNP) for the following reason(s):[1]

   a. the inmate is in danger by/from some person(s) in the facility and cannot be protected by alternate measures;[2]

   b. placement in general population would endanger the inmate's safety or welfare when it is not possible to protect him/her by other means;[3]

   c. the inmate is a danger to himself/herself or others;[4]

   d. the inmate is suspected of being or is the instigator of a disturbance;

   e. the inmate would pose an escape risk in a less secure status;

   f. the inmate has been charged with, or is under investigation for a violation of facility rules and there is a need for increased control pending disposition of charges or completion of the investigation;

   g. the inmate has requested and been granted self-confinement;

   h. the inmate is being held temporarily for another authority and is not classified for the general population of the holding facility; however, a Parole Violator (PV) and temporary transfers from another facility are eligible for release to general population;

   i. the inmate has a detainer for a pending capital case, for which the prosecution is seeking the death penalty;

   j. no records and/or essential information are available to determine the inmate's custody level or housing needs; and/or

   k. the inmate has completed a Discipline Custody (DC) sanction but one or more of the above reasons exist, (or the facility has an operational need (e.g., appropriate bed space) to temporarily assign the inmate to AC status).

---

[1] 4-4404
[2] 4-4281
[3] 4-4281
[4] 4-4250, 4-4281

Issued: 10/1/2012
Effective: 10/9/2012

1-1

**DC-ADM 802, Administrative Custody Procedures Manual**
**Section 1 – Placement in Administrative Custody Status**

2. The following factors shall be considered by the Program Review Committee (PRC) when reviewing an inmate for AC status placement as self-confinement:

   a. verifiable and documented justification exists for placement;

   b. the inmate is an obvious target for other inmates, consistent with the definition of Protective Custody; and

   c. staff have made every effort (documented) to keep the inmate safely housed in general population.

3. An inmate who has completed a DC sanction that was imposed in accordance with Department policy **DC-ADM 801, "Inmate Discipline"** may be placed in AC status by order of the PRC for any of the reasons identified in **Subsection A.2, above**; however, a hearing shall be held as described in **Section 2** of this manual.

4. Whenever practical, written notice of the reasons for AC placement is given to the inmate prior to placement, but in all cases within 24 hours after placement. The written notice shall be prepared on the **DC-141, Part I, Misconduct Report** by indicating "Other."[5]

5. If the inmate has a mental illness, the PRC should explore the feasibility of placing him/her into a Secure Special Needs Unit (SSNU) or a Special Needs Unit (SNU) as an alternative, as long as the inmate's safety is not jeopardized. If the inmate's safety cannot be reasonably assured in any status other than AC, then appropriate mental health services must be provided while the inmate remains in AC status.

6. When an inmate is placed in AC status the Facility Manager/designee shall review the placement within 72 hours.[6]

**B. Restricted Release List Placement**

1. The Facility Manager/designee may request that an inmate be placed on the Restricted Release List (RRL) when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern. The Secretary/designee must approve placing the inmate in this status.

2. Criteria for placing an inmate on the RRL include, but are not limited to, the following:

   a. assaultive history against staff;

   b. assaultive history against inmate(s);

   c. sexual assault history;

---

[5] 4-4404
[6] 4-4250

1-2

Issued: 10/1/2012
Effective: 10/9/2012

**DC-ADM 802, Administrative Custody Procedures Manual**
**Section 1 – Placement in Administrative Custody Status**

    d. escape history, or serious escape attempt;

    e. threat to the orderly operation of a facility (i.e., attempting to organize inmates, demonstrated involvement in a Security Threat Group (STG) that poses a risk to the security of the facility, etc.);

    f. Special Management Unit (SMU) graduate who remains a threat; and/or

    g. SMU failure.

3. The Facility Manager/designee will provide written rationale supporting the request that an inmate be placed on the RRL, to the Regional Deputy Secretary via the **Restricted Release List Placement/Annual RRL Review/Removal Request Form (Attachment 1-A)**. The form shall be initiated by the Unit Manager and forwarded to the CCPM, DSCS, DSFM, Facility Manager, the Regional Deputy Secretary, and the **Executive Deputy Secretary** indicating approval/disapproval to place an inmate on the Restricted Release List.

4. The **Executive Deputy Secretary** will review the recommendation; indicate his/her approval or disapproval, and forward the **Restricted Release List Placement/Annual RRL Review/Removal Request Form** to the Secretary/designee for review. The Secretary/designee will make the final determination regarding the inmate's placement on the RRL.

5. The completed **Restricted Release List Placement/Annual RRL Review/Removal Request Form** will be forwarded to the Office of Population Management (OPM).

    a. If the request is approved, the OPM will update the RRL on DOCNet and make a notation in the Unit Management System, under the "Security Concerns" section. The reason the inmate was assigned to the RRL will be included.

    b. If the request is disapproved, the OPM will file the request.

6. If placement on RRL is approved and an H Code has not been assigned, the counselor will initiate the **DC-46, Vote Sheet** for this purpose, in accordance with Department policy **11.2.1, "Reception and Classification," Section 3 – Pennsylvania Additive Classification Tool (PACT)**.

7. Release of an inmate on the RRL shall be in accordance with **Section 4** of this manual.

Issued: 10/1/2012
Effective: 10/9/2012

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 2 – Administrative Hearings*

## Section 2 – Administrative Hearings

### A. General

An Administrative Hearing shall be conducted as follows:

1.  The hearing shall be conducted by the Program Review Committee (PRC).

2.  The reason(s) for the inmate's Administrative Custody (AC) confinement must be explained to the inmate.

3.  When the inmate is in AC status as pre-hearing confinement on a misconduct charge, an Administrative Hearing will not be held, provided a hearing on the misconduct charge is held within seven workdays, excluding weekends and State holidays, and the misconduct charge is disposed of at that hearing. An inmate request for a continuance of the disciplinary hearing is an automatic waiver of the hearing on the reason(s) for pre-conduct confinement. In all other cases, except as noted in **Subsection A.4. below**. The hearing shall be scheduled within seven workdays, excluding weekends and State holidays, after AC placement.

4.  Confinement in AC status for investigative purposes shall not exceed 15-calendar days. The Facility Manager/designee may approve one 15-calendar day continuation of confinement, if the investigation has not been completed. The reason for the continuation shall be documented and a copy provided to the inmate. Following the 30-calendar day period, if the inmate remains in AC status, he/she must be charged with a misconduct and a hearing held within seven workdays, excluding weekends and State holidays. If the investigation indicates that a security concern, as outlined in **Section 1** of this manual exists, but the evidence is not sufficient for a misconduct; the inmate may be scheduled for a hearing to determine if further AC placement is necessary, upon expiration of the 30-calendar days.

5.  The rationale for the AC placement shall be read and explained to the inmate.

6.  The inmate shall be permitted to respond to the rationale for AC placement. The inmate may tell his/her version orally or submit it in writing. A PRC member shall write a summary of any relevant oral statement by the inmate.

7.  The PRC's decision shall be based on some evidence as to whether there is a valid security reason to confine the inmate in AC as defined in **Section 1** of this manual. The evidence may include the counselor's reports, Psychiatric/Psychological information, staff recommendations, and/or investigative reports.

8.  A written summary of the hearing shall be prepared on the **DC-141, Part 3**. It shall include the reason(s) relied upon by the PRC to reach its decision. A copy of the written summary shall be given to the inmate. The inmate may submit a concise summary of the hearing, which shall be made a permanent part of the file.

2-1

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 2 – Administrative Hearings*

9. If, in the opinion of the PRC, the inmate is physically or mentally unable to attend or participate, the hearing shall be postponed until the inmate is able to attend and participate. The decision to postpone a hearing shall be documented on the **DC-141, Part 3** and shall be made close to the time the hearing would have been held. There is no appeal from the decision to postpone the hearing. If the inmate is able to attend and refuses, the hearing will be held in absentia. If the inmate becomes disruptive in the hearing or refuses to follow instructions, he/she shall be removed and the hearing conducted without the inmate being present.

## B. Waivers

1. An inmate may voluntarily waive the hearing at any time prior to the hearing's completion. The inmate may also waive the written notice requirements as well as any time limitations relating to the hearing or the service of notice.

2. All waivers shall be in writing and shall be signed and dated by the inmate.

3. When an inmate requests self-confinement in AC status, such request shall be deemed a waiver of all procedures described in this directive except periodic PRC review. Only written notice of the reason for the AC placement is necessary.

4. An inmate's refusal to attend a hearing shall be deemed a waiver of the proceeding. The refusal shall be documented on the **DC-141, Part 3**. The inmate may not appeal the results of a hearing he/she refused to attend.

## C. Appeals

1. An inmate may appeal the decision of the PRC concerning his/her initial confinement in AC to the Facility Manager/designee within two days of the completion of the hearing. The appeal must be in writing. The decision of the Facility Manager/designee will be forwarded to the inmate within 10 days of the receipt of the appeal.

2. An inmate may appeal the initial decision of the Facility Manager/designee to continue him/her in AC confinement to the Office of the Chief Hearing Examiner. *The inmate may appeal the decision of the Facility manager/designee within seven calendar days of the receipt of the Facility Manager's/designee's decision.* The appeal must be addressed as follows:

The Chief Hearing Examiner's Office
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050

3. The Office of the Chief Hearing Examiner will review the record of the hearing and all other relevant documents and rule on the appeal within two workdays after its receipt.

2-2

**DC-ADM 802, Administrative Custody Procedures Manual**
**Section 2 – Administrative Hearings**

4. In every case where the action of the PRC or the Facility Manager/designee is reversed, the Office of the Chief Hearing Examiner shall prepare a letter to the inmate and a memorandum to the Facility Manager/designee. These will be forwarded to the appropriate Regional Deputy Secretary for review and signature.

5. If the PRC decides to continue the inmate in AC following the 90-day review, the inmate may appeal his/her continuation.

6. The inmate's right to appeal terminates when he/she is released from AC.

7. Inmates are responsible to use the appeal procedures set forth herein in good faith. The Facility Manager may prohibit an inmate who abuses the appeal procedures by filing three or more appeals that are frivolous or not submitted in good faith within a one year period from appealing hereunder.

**D. Periodic Review**

1. The PRC shall review the status of each inmate in AC status every seven days for the first two months.[1]

2. Each inmate in AC status shall be seen weekly by his/her counselor.

3. The Unit Management Team shall review the status of every inmate in AC after 30 days and every 30 days thereafter.[2]

4. The counselor's weekly interviews and the Unit Management Team's monthly reviews are documented in the **DC-14, Cumulative Adjustment Record/Inmate Cumulative Adjustment Record (ICAR)**.

5. The PRC will interview every inmate in AC status every 90 days unless the Unit Management Team recommends an earlier review. The PRC's decision to continue the inmate in AC status or release him/her to population is documented on a **DC-141, Part 4** with a copy provided to the inmate.

6. When an inmate is being recommended for transfer to a Special Housing Unit (SMU, SSNU) the PRC shall review the recommendation with the inmate and inform him/her of the reason(s) for the transfer recommendation. The inmate will be given the opportunity to respond to the rationale given and object to his/her placement in a Special Housing Unit, if he/she so desires. The recommendation shall be documented on the **DC-141, Part 4**, with a copy to the inmate. The inmate may appeal the recommendation for Special Housing Unit transfer to the Facility Manager/designee and Central office, as outlined in **Subsection C.1. through 6. above.**

---

[1] 4-4253
[2] 4-4253

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 2 – Administrative Hearings*

7. A qualified psychologist or psychiatrist shall personally interview and conduct an assessment of any inmate remaining in AC status for more than 30 calendar days. If the inmate's confinement continues for an extended period, a mental health assessment will be completed at least every 90 calendar days.[3]

8. *The review and approval/disapproval of each inmate's status on the RRL will be conducted annually. The assigned counselor shall: initiate the DC-46, Vote Sheet for the purpose of Annual RRL Review at the time of the inmate's regularly scheduled annual review; and ensure that an ICAR entry is completed to record the final outcome of the decision. The Unit Manager shall initiate a Restricted Release List Placement/Annual RRL Review/Removal Request (refer to Attachment 1-A of this manual) indicating Annual Review and either Request Removal or Continuation on RRL, to be routed at the time of the scheduled annual review. All Annual RRL Reviews; DC-46, Vote Sheets; and Restricted Release List Placement/Annual RRL Review/Removal Requests will be forwarded together to the CCPM, DSCS, DSFM, Facility Manager, Regional Deputy Secretary, and the Executive Deputy Secretary for review of the recommendation; indicating approval/disapproval.*

    a. *The Executive Deputy Secretary will forward the Restricted Release List Placement/Annual RRL Review/Removal Request Form to the Secretary/designee for review. The Secretary/designee will make the final determination regarding the inmate's placement on the RRL.*

    b. *The completed Restricted Release List Placement/Annual RRL Review/Removal Request Form will be forwarded to the Office of Population Management (OPM).*

    c. *If the Annual RRL Review is approved for continuation, the OPM will file the request.*

    d. *If the Annual RRL Review is disapproved, the OPM will update the RRL on DOCNet and remove the notation in the Unit Management System.*

9. All issues concerning an inmate's placement in AC custody or the duration, conditions or other circumstances of his/her AC custody must be addressed through the procedures set forth in this directive and may not be addressed through the procedures set forth in DC-ADM 801 or DC-ADM 804. An inmate is required to raise any issue concerning the duration or other conditions of his/her AC custody during the regularly scheduled PRC review. The PRC's decision concerning any issue raised may be appealed through the procedures set forth in Subsection C. above. Issues concerning the failure of the PRC to conduct a timely initial AC placement hearing or a regularly scheduled review may be appealed to the Facility Manager and then to the Chief Hearing Examiner under the procedures set forth in Subsection C. above. The granting or denial of privileges may not be appealed.

---

[3] 4-4256

Issued: 10/1/2012
Effective: 10/9/2012

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 3 – AC Housing Status*

## Section 3 – AC Housing Status[1]

### A. General

1. Administrative Custody (AC) is a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided in general population. An inmate confined in this status shall not have the privileges available in general population security level housing. An AC inmate who is assigned to a Special Housing Unit (SMU, SSNU, SAU, etc.) shall have privileges as defined within the unit's handbook, and according to the program level the inmate has attained.

2. The following conditions apply to an inmate in AC status in a regular Security Level 5 (SL5) Housing Unit:

   a. all tobacco products are prohibited;

   b. there are no radio, television or telephone calls (except emergency or legal telephone calls) in accordance with Department policy **DC-ADM 818, "Automated Inmate Telephone System,"** and **6.5.1, "Administration of security Level 5 Housing Units;"**

   c. any combination of personal property that will fit into one standard-size records center box may be maintained in the cell. Personal property includes commissary, prescribed medication and written materials in accordance with Department policy **DC-ADM 803, "Inmate mail and Incoming Publications;"**[2]

   d. all visits are non-contact in accordance with Department policies **DC-ADM 812, "Inmate Visiting Privileges"** and **6.5.1**; and

   e. an inmate shall be permitted to exchange legal materials from his/her cell with stored legal materials once every 30 days. The PRC may authorize more frequent exchanges based upon a demonstrated need for additional exchanges for active litigation. Such exchanges, however, may not exceed one per week.[3]

3. An inmate shall be provided access to the facility law library in accordance with Department policy **DC-ADM 007, "Access to Provided Legal Services."**[4]

4. Leisure reading material may be requested from the library on a weekly basis.

5. A jumpsuit, footwear, and basic issue toilet articles shall be provided. Two sets of personal undergarments are permitted. No other personal apparel is permitted. Outerwear will be provided as needed.

---

[1] 4-4249
[2] 4-4269
[3] 4-4268
[4] 4-4268
Issued: 6/1/2011
Effective: 6/7/2011

3-1

**DC-ADM 802, Administrative Custody Procedures Manual**
**Section 3 – AC Housing Status**

6. Exercise shall be offered one hour per day, five days per week.[5]

7. The opportunity to shower and shave shall be offered three times per week.

8. The PRC or SL5 Unit Management Team may approve additional privileges based on individual needs, safety and security, and the behavioral progress of the inmate. Approved additional privileges shall be indicated on the Inmate Cumulative Adjustment Record (ICAR).

   a. An inmate who has been approved for additional privileges at one facility will retain the extended privileges granted if transferred, unless the receiving PRC or SL5 Unit Management Team provides a justification outlining the rationale to reduce the privileges previously granted. An inmate placed in special programs, i.e., SMU, SSNU, SAU, etc. will follow specific program guidelines.

   b. In order to standardize eligibility periods for additionally approved items, the periods listed in **Subsection A.9. below** shall be used. The PRC or SL5 Unit Management Team may deviate from the below listed procedures. A written justification shall be provided outlining the rationale for the deviation. The rationale for the deviation is to be recorded via the **DC-141, Part 3, Program Review Committee Action Form**, as well as notated in the **DC-17X, Adjustment Record for SL5 inmates**, and the **ICAR**.

9. Privilege Timeframe Procedures

   An inmate is considered eligible for additional privileges according to the progressive procedures identified below after the PRC or the SL5 Unit Management Team has reviewed the circumstance(s) for the AC placement. The inmate must have demonstrated positive behavior during the review period and be free of misconducts during the period leading up to consideration.

   a. Increased telephone calls – after 90 days AC status.

   b. Increased commissary – after 90 days AC status.

   c. A radio – after 120 days AC status.

   d. A television – after 180 days AC status.

   e. An inmate assigned to the Restricted Release List (RRL) on AC status may be considered for PRC approved privileges after 90 days from the time he/she is assigned to the RRL.

   f. An inmate in long term AC status may be eligible for the General Labor Pool (GLP) compensation after 180 days with the support of the Unit Management Team and PRC (GLP should only be considered when the inmate's long term AC confinement is

---

[5] 4-4270
Issued: 6/1/2011
Effective: 6/7/2011

***DC-ADM 802, Administrative Custody Procedures Manual***
***Section 3 – AC Housing Status***

based upon the facility's need for increased control. An inmate who is granted Protective Custody (PC) should not be considered as eligible. This applies to PC that is due to the inmate's own actions, as opposed to a true need for protection (such as a sexual assault victim, a physical assault victim, former law enforcement officer, etc.). When an inmate who is receiving GLP compensation is transferred he/she will be reviewed for continued GLP compensation upon arrival at the receiving facility).

(1) This does not apply to an inmate housed in a SL5 specialized program. Compensation for an inmate housed in a SL5 specialized program shall be in accordance with department policy **6.5.1**.

(2) The inmate must comply with the GLP requirements in accordance with Department policy **DC-ADM 816, "Inmate Compensation."** He/she must maintain an acceptable level of personal hygiene, the cleanliness of his/her living quarters and accept work assignments within the housing unit. The inmate must follow all rules, participate in recommended programs, and be willing to accept any employment or school assignment offered.

(3) The GLP compensation rate for an AC status inmate shall be $.50 a day, however, should he/she lose GLP status due to a misconduct or Unit Management Team action, he/she will receive the $.50 compensation rate if/when the PRC reinstates him/her to GLP status.

(4) Any additional privilege(s), if permitted, may be revoked by the PRC or SL5 Unit Management team based on a change in individual need, safety and security, or inappropriate behavior of the inmate. Revocation of a privilege(s) must be properly documented on a **DC-141, Part 3, DC-17X**, and **ICAR**. If the inmate receives a misconduct for a violation directly involving the granted privilege(s), the eligibility guidelines previously identified must be achieved prior to the privilege(s) being reinstated.

10. The denial and/or revocation of privileges by the PRC shall not be subject to the appeal process set forth in **Section 2** of this procedures manual.

**B. Program Considerations**[6]

An inmate housed in AC status should be provided access to programs and services that include, but are not limited to:

1. educational services;

2. commissary (in accordance with Department policy **DC-ADM 815**);

3. library services;

---

[6] 4-4273
Issued: 6/1/2011
Effective: 6/7/2011

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 3 -- AC Housing Status*

4. casework, counseling, and diagnostic and classification service; and

5. religious guidance in accordance with Department policy **DC-ADM 819, "Religious Activities."**

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 4 – Release from Administrative Custody Status*

## Section 4 – Release from Administrative Custody Status

### A. General

1.  The Unit Management Team may recommend that the Program Review Committee (PRC) release an inmate from Administrative Custody (AC) status.[1]

2.  With the exception of a Capital Case inmate or an inmate on the Restricted Release List (RRL), the Facility Manager/designee or the PRC may release an inmate from AC status to general population at any time.[2]

3.  The following factors shall be evaluated in making a decision to continue or release an inmate from AC status.[3]

    a.  length of time in RHU;

    b.  number, type, and frequency of misconducts;

    c.  continued public or facility risk;

    d.  safety of the inmate, other inmates, and staff;

    e.  the inmate's behavior while in AC status, including sanitation, personal hygiene/grooming, response to authority and other inmates, and to verbal and written orders; and

    f.  recommendations of the unit and treatment staff.

4.  The PRC or the Facility Manager/designee may release an inmate from Protective Custody (PC) to general population at any time when the rationale used for placing the inmate in PC status is not longer valid. The PRC or the Facility Manager/designee shall document the reasons for the release of the inmate from PC on a **DC-141, Part 3, *Program Review Committee Action (Attachment 4-A)***.

5.  Release from POC, in accordance with Department policy **13.8.1, Section 3.C.**:

    a.  An inmate shall only be discharged from a POC upon being assessed face-to-face by the psychiatrist/Certified Registered Nurse Practitioner- Psychiatric Services (PCRNP) and only upon a written order by the psychiatrist/PCRNP. Verbal or telephone orders for discharge are not acceptable.

    b.  The nursing supervisor shall ensure that the PRC is notified of planned POC discharges so that PRC may arrange for appropriate housing.

---

[1] 4-4254
[2] 4-4254
[3] 4-4254

Issued: 11/13/2012
Effective: 11/20/2012

**DC-ADM 802, Administrative Custody Procedures Manual**
**Section 4 – Release from Administrative Custody Status**

6. If the inmate's release from AC status involves a transfer from the facility, the following procedures are to be followed:

   a. the Facility Manager/designee shall make such a recommendation to the Director, Bureau of Treatment Services (BTS) via a transfer request. The transfer rationale should include a recommendation regarding which facility, or other jurisdiction, would be best suited to house the inmate. The rationale should also include programming needs, as well as continuing security concerns;

   b. the transfer committee will review the referral and provide a recommendation to the respective Regional Deputy Secretary; and

   c. the Regional Deputy Secretary shall make the final decision regarding the release of the inmate from AC status for protection and, if the transfer is approved, shall decide the facility to which the inmate will be transferred.

**B. Restricted Release List**

1. An inmate identified on the RRL may not be released from a Security Level (SL) 5 Housing Unit or transferred to another facility without the written approval of the Secretary/designee.

2. The PRC may make a recommendation to the Facility Manager/designee if it is believed that an inmate on the RRL could be safely released to general population or to a Specialized Housing Unit.

3. If the Facility Manager recommends that an inmate be released from the RRL, the **Restricted Release List Placement/Annual RRL Review/Removal Request Form (refer to Attachment 1-A of this procedures manual)** will be completed requesting removal; it will be forwarded to the Regional Deputy Secretary for review indicating approval/disapproval. The Regional Deputy Secretary will forward the **Restricted Release List Placement/Annual RRL Review/Removal Request Form** to the Executive Deputy Secretary for review of the recommendation; indicating approval/disapproval.

4. The Executive Deputy Secretary will forward the **Restricted Release List Placement/Annual RRL Review/Removal Request Form** to the Secretary/designee. The Secretary/designee will make the final determination regarding the inmate's removal from the Restricted Release List.

5. If the recommendation to release the inmate is approved, the approval will be forwarded to the Office of Population Management (OPM). The OPM will update the RRL on DOCNet and remove the notation in the Unit Management System.

Issued: 11/13/2012
Effective: 11/20/2012

# EXHIBIT 4

## Grievances and Final Appeal Decisions

## FINAL APPEAL DECISION
### Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
P.O. Box 598, 2520 Lisburn Road
Camp Hill, PA 17001-0598

This serves to acknowledge receipt of your appeal to final review for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the grievance officer's response, your appeal to the facility manager, the facility manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this Office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Professional Responsibility, etc.) may have been solicited in making a determination in response to your issue as well.

| Inmate Name: | Craig Williams | Inmate Number: | BX9919 |
|---|---|---|---|
| SCI Filed at: | Greene | Current SCI: | Greene |
| Grievance #: | 243159 | | |
| Publication (if applicable): | | | |

**Decision:** **Uphold Response (UR)**
*The original or revised responses provided at the institutional level are reasonable and appropriate in accordance with Department of Corrections' policy and procedure. Accordingly, your final appeal is denied.*

**Response:**  Frivolous
You have failed to provide any evidence that your rights have been violated or that your classification as a capital case inmate should be changed and that you should be placed in general population since your death sentence has been vacated. A review of the record reveals that an appeal regarding your case is currently pending in the Pennsylvania Supreme Court. Further investigation reveals that the pending appeal was filed by you from the denial of your request for a new trial. Further investigation also reveals that you were granted a new penalty hearing, and you may still be subject to the imposition of the death sentence. Therefore, per DOC policy, until all appeals have been resolved, you will remain housed as a capital case inmate.

| | |
|---|---|
| Signature: | Dorina Varner *Dorina Varner* |
| Title: | Chief Grievance Officer |
| Date: | 12/15/08 |

DLV/LLS

CS4
12/22/08
/RH

cc:  DC-15/Superintendent Folino
     Grievance Office

JA-127

## GRIEVANCE DEADLINE NOTICE
### Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
P.O. Box 598, 2520 Lisburn Road
Camp Hill, PA 17001-0598

In accordance with the provisions of DC-ADM 804, "Inmate Grievance System", this notification either responds to your recent communication expressing an interest in extending the established timeline for submitting the below noted grievance (or appeal), or provides notice that staff requires an extension for responding to your grievance.

| Inmate Name: | Craig Williams | | Inmate Number: | BX-9919 |
|---|---|---|---|---|
| SCI Filed at: | Greene | | Current SCI: | Greene |
| Grievance #: | 243159 | | | |

| Action: | | | |
|---|---|---|---|
| | | **Inmate Request Denied** – Your request for an extension of time has been denied. | |
| | | **Inmate Request Approved** – Your request for an extension of time has been approved. You have been granted 10 additional working days to submit your grievance (or appeal). | |
| | X | **Notice of Staff Extension** – This serves as written notification that an extension is necessary in order to appropriately investigate and respond to your grievance (or appeal). Staff has been authorized to extend the response time by 10 additional working days. | |
| Comments: | | | |

| Signature: | Dorina Varner    *Dorina Varner* |
|---|---|
| Title: | Chief Grievance Officer |
| Date: | 12/2/08 |

DLV/KLM

cc:    Superintendent Folino
       Grievance Office
       DC-15

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI GREENE
OFFICE OF THE SUPERINTENDENT
724-852-2902
October 10, 2008

**SUBJECT:** First-Level Appeal
To Grievance Number 243159

**TO:** Mr. Williams, BX-9919
G Unit A Pod

**FROM:** Louis S. Folino
Superintendent

I am in receipt of your grievance number 243159, dated September 15, 2008; the Initial Review Response by Ms. Friday, Records Supervisor, dated October 7, 2008; and your first-level appeal received in this office on October 10, 2008.

Please be advised, I concur fully with the Initial Review Response provided by Ms. Friday. Your appeal offers no evidence of merit on which to reconsider her review of this matter.

Your appeal is hereby denied.

LSF:tls

cc:     Deputies
Grievance Coordinator
DC-15

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER**<br><br>2008 OCT | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer)<br>Superintendant Mr. Folino | 2. Date:<br>10/09/08 |
| 3. By: (Print Inmate Name and Number)<br>Craig William #BX-9419 | 4. Counselor's Name:<br>Mr. Felice |
| _____<br>Inmate Signature | 5. Unit Manager's Name:<br>Mr. Guytum |
| 6. Work Assignment:<br>None | 7. Housing Assignment:<br>G/A-8 |

8. Subject: State your request completely but briefly. Give details.

I'm appealing grievance Nu 243154 bccause the decision to hold me in hole any when my sentence is overturned and is not being appealed by the district attorney is not in accordance with our 3rd Circuit ruling in Stevenson v. Carroll 495 F.3d 62 (C.A.3 (Del.) 2007) and is violating my due process right. Therefore, I should be placed in population until I'm retried.

I received a response on 10/06/08 that dated 10/07/08 from Tina L. Felix. She states that it is DOC policy to house me as needed because I'm in for Mr. Felony. This is not how the D.O.C. is not violating the Stevenson v. incredal. even. My death sentence have been vacated and is not being appealed. The DA represents by admitting to error that my death penalty will be overturned. They did not appeal that I appealed for fun extraordinary hearing and/or new trial. Therefore, I'm to pre-trial detainee until I'm retried. And, there exist no penal legitimate interest to continue me, because I'm no longer a threat, and while I'm on appeal. The Stevenson decision pertains to do this but, with new sentence hearing.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

STAFF MEMBER NAME _____          DATE _____
                              Print                                    Signature

*7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips*          *Attachment 3-A*

*CO*

DC-804
Part 2

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

GRIEVANCE NO.

| 243159 |

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

| TO: (Inmate Name & DC No.) WILLIAMS, Craig DOC# BX9919 | FACILITY SCI-Greene | HOUSING LOCATION GB1 | GRIEVANCE DATE September 14, 2007 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

Mr. Williams,

In your grievance you state that you are being held illegally in the Capital Case Unit.

Grievance 243159 dated September 14, 2008, has been assigned to me for review and to provide a response.

You are being held per DOC Policy 6.5.8 Capital Case Procedures Manual, Section 1 – Phase 1 Inmates.  The policy states that if the District Attorney intends to appeal, the inmate shall not be moved from the Capital Case Unit.  According to the Philadelphia County District Attorney's Office, your case is currently on appeal with the PA Supreme Court.

I feel this grievance should be dismissed as the Department of Corrections is acting according to Policy and to the information provided by the Philadelphia District Attorney' Office.


cc:    Deputies
       Grievance Coordinator
       CCPM Rogers
       DC-15


| Tina L. Friday | *Tina L. Friday* | October 7, 2008 |
|---|---|---|
| Records Supervisor | | |

JA-131

| FORM DC-14 | | |
|---|---|---|
| **CUMULATIVE ADJUSTMENT RECORD** Greene _Institution_ | | **COMMONWEALTH OF PENNSYLVANIA** **DEPARTMENT OF CORRECTIONS** |

| INSTITUTIONAL NUMBER BX9919 | PPBP NUMBER | NAME **WILLIAMS, Craig** |
|---|---|---|

| DATE | OBSERVATION |
|---|---|
| 9/29/2008 1400 hrs. | Telephoned Mr. Hugh Burns (Chief of Appeals for Philadelphia County) **(215-686-5730)** regarding status of appeal for inmate – Execution Case CP-51-CR-0525631-1987). Left a message for him to call me back. ————————— Robin Shriver, RS2, SCI-Greene |
| 9/30/2008 0950 hrs. | Chief Burns telephoned to say that inmate's case (our case #0525631-1987; their docket #514 CAP) is in appeal. They are waiting to hear from the PA Supreme Court. As long as the case is in appeal, re-sentencing cannot take place. Inmate will have to wait until the decision is handed down. Until then, his current execution sentence stands.<br><br>Tina Friday (Records Supervisor) informed. ————————— Robin Shriver, RS2, SCI-Greene |

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI GREENE
724-852-2902
September 29, 2008

**SUBJECT:**   Notification of Extension
of Initial Review 243159

**TO:**   Mr. Williams, BX-9919
G Unit B Pod

**FROM:**   Dan Davis
Superintendent's Assistant/Grievance Coordinator
SCI Greene

An extension was requested and granted to the Assigned Grievance Officer in this case. Therefore, this memorandum is to notify you that you may expect the Initial Review Response to be forwarded to you no later than October 14, 2008.

Should you have any questions or concerns regarding this grievance, please do not hesitate to contact me via a request slip.

Thank you for your patience.

DD:tls

cc:   Assigned Grievance Officer
CSA Grievance File at 243159
DC-15

**Friday, Tina**

| | |
|---|---|
| From: | Shawley, Tracy |
| Sent: | Monday, September 29, 2008 2:18 PM |
| To: | Friday, Tina |
| Subject: | 243159 |

Extension completed---due 10/14/08

*Tracy Shawley, CTII*
*Superintendent's Area*

DC-804
Part 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P. O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY
243159
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Mr. Dan Davis | S.C.I.-Greene | 09 / 14 / 08 |
| FROM: (INMATE NAME & NUMBER)  # BX-9919 | SIGNATURE of INMATE: | |
| Craig Williams | Craig Williams | |
| WORK ASSIGNMENT:  None | HOUSING ASSIGNMENT:  G/B-1 | |

INSTRUCTIONS:
1.  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2.  State your grievance in Block A in a brief and understandable manner.
3.  List in Block B any actions you may have taken to resolve this matter.  Be sure to include the identity of staff
    members you have contacted.

A.  Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages (one
    DC-804 form and one one-sided 8 ½" x 11" page). **State all relief that you are seeking.**

I Place in this plaint to request to be placed in population since
My death sentence has been vacated, and is not being appealed.
I am a pre-trial detainee whom due process of law is being
violated under Stevenson v. Carroll, 495 F.3d 62 (C.A.3
(Del.) 2007).

B.  List actions taken and staff you have contacted, before submitting this grievance.

I discoursed with the Counselor and Unit Manager, and they said, there
nothing they could do.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator

9/15/08
Date

**WHITE** - Facility Grievance Coordinator Copy  **CANARY** - File Copy  **PINK** - Action Return Copy  **GOLDENROD** - Inmate Copy
Revised
April 2005

JA-135

P. 1

* * * COMMUNICATION RESULT REPORT ( DEC.15.2008  9:31AM ) * * *

TTI

| FILE MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|---|---|---|---|---|
| 338  MEMORY TX | | 917177310498 | OK | P. 2/2 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL          E-2) BUSY
E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION

# COMMONWEALTH OF PENNSYLVANIA

## DEPARTMENT OF CORRECTIONS



# STATE CORRECTIONAL INSTITUTION AT GREENE

## OFFICE OF THE SUPERINTENDENT'S ASSISTANT

169 Progress Drive
Waynesburg, PA 15370-8089
Phone (724) 852-2902
Fax (724) 852-5541

# FAX TRANSMISSION COVER SHEET

JA-136

| CUMULATIVE ADJUSTMENT RECORD | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|
| Greene<br>Institution | |

| INSTITUTIONAL NUMBER<br>BX9919 | PPBP NUMBER | NAME<br>**WILLIAMS, Craig** |
|---|---|---|

| DATE | OBSERVATION |
|---|---|
| 9/29/2008<br>1400 hrs. | Telephoned Mr. Hugh Burns (Chief of Appeals for Philadelphia County) **(215-686-5730)** regarding status of appeal for inmate – Execution Case CP-51-CR-0525631-1987). Left a message for him to call me back. ———————————— Robin Shriver, RS2, SCI-Greene |
| 9/30/2008<br>0950 hrs. | Chief Burns telephoned to say that inmate's case (our case #0525631-1987; their docket #514 CAP) is in appeal. They are waiting to hear from the PA Supreme Court. As long as the case is in appeal, re-sentencing cannot take place. Inmate will have to wait until the decision is handed down. Until then, his current execution sentence stands.<br><br>Tina Friday (Records Supervisor) informed. ———————————— Robin Shriver, RS2, SCI-Greene |

# COMMONWEALTH OF PENNSYLVANIA

## DEPARTMENT OF CORRECTIONS



# STATE CORRECTIONAL INSTITUTION AT GREENE
## OFFICE OF THE SUPERINTENDENT'S ASSISTANT
169 Progress Drive
Waynesburg, PA 15370-8089
Phone (724) 852-2902
Fax (724) 852-5541

## FAX TRANSMISSION COVER SHEET

DATE:        December 15, 2008

TO:          Tracy Pollock
             Grievance Review Officer

FAX:         **(717) 731-0498**

SENDER:      Tracy Shawley for
             Dan Davis, Superintendent's Assistant II

---

YOU SHOULD RECEIVE 2 PAGE(S,) INCLUDING THIS COVER SHEET.
IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL **(724) 852-5514.**

---

NOTES:  Per your request of 12/12/08.

Case 2:12-cv-00944-MRH-LPL   Document 38-4   Filed 04/25/13   Page 14 of 29

## FINAL APPEAL DECISION
### Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
P.O. Box 598, 2520 Lisburn Road
Camp Hill, PA 17001-0598

This serves to acknowledge receipt of your appeal to final review for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the grievance officer's response, your appeal to the facility manager, the facility manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this Office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Professional Responsibility, etc.) may have been solicited in making a determination in response to your issue as well.

| Inmate Name: | Craig Williams | Inmate Number: | BX 9919 |
|---|---|---|---|
| SCI Filed At: | Greene | Current SCI: | Greene |
| Grievance #: | 317048 | | |
| Publication (if applicable): | | | |

| Decision: | Uphold Response (UR) |
|---|---|

*The original or revised responses provided at the institutional level are reasonable and appropriate in accordance with Department of Corrections' policy and procedure. Accordingly, your final appeal is denied.*

**Response:**

This office is in receipt of your appeal to the above grievance in which you claim that your execution sentence was vacated in July of 2006 and you are being improperly housed on the Capital Case Unit. You allege that your rights are being violated as a result. A review of the record reveals that you were granted a new "penalty hearing;" however, you were denied a new trial. The record reflects that your execution sentence was not vacated as you claim. Until such time that your execution sentence is vacated or changed, you will remain a Capital Case Prisoner who is properly housed in the Capital Case Unit. If or when the records office receives appropriate verifiable documentation of a change in your sentence, your housing will be reviewed. There is no evidence to suggest that your rights are being violated for any reason.

It is noted that you were informed of this in grievance number 243159. Please refer to that response.

| Signature: | Dorina Varner  *Tracy Williamsfer* |
|---|---|
| Title: | Chief Grievance Officer |
| Date: | 6/17/10 |

DLV/MEB

cc:   DC-15/Superintendent Folino
     Grievance Office
     *C.S.A*
     *6/25/10 MH*



**pennsylvania**
DEPARTMENT OF CORRECTIONS

**TO:**       Mr. Williams, BX-9919
             L Unit C Pod

**FROM:**     Louis S. Folino
             Superintendent

**DATE:**     June 2, 2010

**RE:**       First-Level Appeal
             To Grievance Number 317048

I am in receipt of your grievance number 317048, dated May 4, 2010; the Initial Review Response by Ms. Friday, Records Supervisor, dated May 18, 2010 and your first-level appeal received in this office on May 25, 2010.

Please be advised, I concur fully with the Initial Review Response provided by Ms. Friday.  Your appeal offers no evidence of merit on which to reconsider her review of this matter.

Your appeal is hereby denied.

LSF: msh

cc:          Grievance Coordinator
             DC-15

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**
2010 MAY 25  AM 8:42

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| | |
|---|---|
| 1. To: (Name and Title of Officer)<br>Supt. Louis S. Folino | 2. Date:<br>05 / 24 / 10 |
| 3. By: (Print Inmate Name and Number)<br>Craig Williams # BX-9919 | 4. Counselor's Name<br>Mr. P. Felice |
| _____<br>Inmate Signature | 5. Unit Manager's Name<br>Mr. Vidonish |
| 6. Work Assignment<br>None | 7. Housing Assignment<br>L-G-30 |

8. Subject: State your request completely but briefly. Give details.

I'm appealing a grievance no. 317048 that was written out on 04/25/10 and processed on 05/14/10. The I.P.P. was written on 05/18/10 and hand delivered to me on 05/24/10 on the 2 to 10 mail call.

Tina L. Friday states in her response that 6.5.8 capital case policy is keeping me confined in the C.C.U. because my case is currently on appeal in the Pa. Supreme Court. This is untrue.

My case was decided by the State Supreme Court on Oct. 9 2009. Therefore, according to the policy, I should be placed in population.

Nevertheless, I still sit idle in the C.C.U./deathrow in violation of my rights under due process to be free from punishment and the 8th amendment to procure mitigating evidence for my defence. The prison and D.O.C. policy also violates Title 28 U.S.C. § 2241 and Title 28 U.S.C. § 1983. I'm hereby is my request to be released into population.

9. Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ _____ Date _____
                        Print                Sign

Revised July 2000

DC-804.
Part 2.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

GRIEVANCE NO. | 317048

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

| TO: (Inmate Name & DC No.)<br>BX-9919<br>Williams, Craig | FACILITY<br>SCI-Greene | HOUSING LOCATION<br>LC-2T30 | GRIEVANCE DATE<br>04/29/2010 |
|---|---|---|---|

**COMPLAINT:**

In your grievance you state that you are being incorrectly housed in the Capital Case Unit.

**FACTS:**

You are being held per DOC Policy 6.5.8 Capital Case Procedures Manual, Section I – Phase I inmates. The policy states that if the District Attorney intends to appeal, the inmate shall not be moved from the Capital Case Unit. According to the Philadelphia County District Attorney's Office, your case is currently on appeal with the PA Supreme Court.

**DECISION:**

Based on the facts of the case, the grievance is denied. Inmate Williams is currently being housed appropriately.

Cc:     Deputies

        Grievance Coordinator

        DC-15

| Tina L. Friday    *Friday*<br>Records Supervisor | SCI-Greene | May 18, 2010 |
|---|---|---|

Case 2:12-cv-00944-MRH-LPL   Document 38-4   Filed 04/25/13   Page 18 of 29

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY

317048

GRIEVANCE NUMBER

5/18
CK

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Mr. Dan Davis | S.C.I. - Greene | 04/29/10 |

| FROM: (INMATE NAME & NUMBER) # BX-9919 | SIGNATURE of INMATE: |
|---|---|
| Craig Williams | Craig Williams |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| None | L-C-21 |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). *State all relief that you are seeking.*

I am a pretrial detainee whom no longer have a death sentence, yet and still, I'm illegally being confined in the Capital Case Unit in violation of my due process rights under the 14th and 6th Amendments. Also, in violation of § 2241 and § 1963. I'm requesting to be removed from the C.C.U. and place in general population to gather mitigating evidence to prepare for my new sentencing hearing.

**B.** List actions taken and staff you have contacted, before submitting this grievance.

There's no one with the authority at S.C.I.-Greene that I can complain to, because it's Camp Hill D.O.C. that continue to violate the constitution and statutes by housing people with new trial and new penalty phase hearing on deathrow.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_Dan Davis_
Signature of Facility Grievance Coordinator

5/4/2010
Date

DC-804
Part 3

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**OFFICE OF THE SUPERINTENDENT'S ASSISTANT**
**SCI-GREENE**

DATE:        May 6, 2010

SUBJECT:     Grievance Rejection Form

TO:          Mr. Williams, BX-9919
             L Unit C Pod

FROM:        Dan Davis
             Superintendent's Assistant

> FOR OFFICIAL USE ONLY
> **317122**
> GRIEVANCE NUMBER

The attached grievance is being returned to you because you have failed to comply with the provision(s) of DC-ADM 804, Inmate Grievance System:

1. _____   Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator.

   a. DC-ADM 801 – Inmate Disciplinary and Restricted Housing Unit Procedures.
   b. DC-ADM 802 – Administrative Custody Procedures.
   c. Other policies not applicable to DC-ADM 804.

2. _____   The grievance does not indicate that you were personally affected by a Department or facility action or policy.

3. _____   Group grievances are prohibited.

4. _____   The grievance was not signed and/or dated with your commitment name & number.

5. _____   Grievances must be legible, understandable, and presented in a courteous manner.

6. _____   The grievance exceeded the two (2) page limit. Description needs to be brief.

7. _____   Grievances based upon different events shall be presented separately.

8. _____   The grievance was not submitted within fifteen (15) working days after the events upon which claims are based.

9. _____   You are currently under grievance restriction. You are limited to one grievance each 15 working days. You filed grievance no. _____ on _____
                                                                                    Date

10. _____  Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility—_____

11. __X__    The issue(s) presented on the attached grievance has been reviewed and addressed previously in grievance numbers 317048 dated 5/4/10.

Additional Comments:

DD:tis

Cc:    FILE
       DC-15



DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P. O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY
**3|7|22**
GRIEVANCE NUMBER

OFFICIAL INMATE GRIEVANCE

| | | |
|---|---|---|
| TO: FACILITY GRIEVANCE COORDINATOR | 2010 MAY 6  AM 8: 54 | DATE: |
| Mr. Dan Davis | S.C.I.-Greene | 05 / 05 / 10 |
| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: | |
| Craig WILLIAMS #BX-999 | Craig Williams | |
| WORK ASSIGNMENT:  None | HOUSING ASSIGNMENT:  L-C-30 | |

INSTRUCTIONS:
1. Refer to the DC 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8 1/2" x 11" page). **State all relief that you are seeking.**

This grievance is to contest my illegal confinement on deathrow C.C.U. as a Capital case prisoner, when I no longer have a deathsentence. This illegal confinement, violates my due process rights, to be liberated from punishment. And, infringes under the laws of subsection 2241 and 1983. As well as the 8th and 14th Amendment.

★ I'm requesting to be released to general population, so I can gather mitigating evidence for my resentencing hearing in the future, and to be treated as a pretrial detainee, that is unsentenced.

B. List actions taken and staff you have contacted, before submitting this grievance.

There exist no staff member here to complain to that have the power to release me into the general population, since the authority and policy derives from D.O.C. Hself which is located in Camp Hill, Pennsylvania

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Facility Grievance Coordinator

5/6/10
_____
Date

**WHITE** - Facility Grievance Coordinator Copy  **CANARY** - File Copy  **PINK** - Action Return Copy  **GOLDENROD** - Inmate Copy
Revised
April 2005

JA-145

**FINAL APPEAL DECISION**
## Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
P.O. Box 598, 2520 Lisburn Road
Camp Hill, PA  17001-0598

This serves to acknowledge receipt of your appeal to final review for the grievance identified below.  In accordance with the provisions of DC-ADM 804, "Inmate Grievance System", this Office has reviewed all documents provided as part of the grievance record.  Upon consideration of the entire record, it is the decision of this office to dismiss your appeal to final review due to a failure to comply with the provisions of the DC-ADM 804, as specified below.

| Inmate Name: | Craig Williams | | Inmate Number: | BX 9919 |
|---|---|---|---|---|
| SCI Filed At: | Greene | | Current SCI: | Greene |
| Grievance #: | 321187 | | | |

| Decision: | | Dismiss |
|---|---|---|
| | X | 1) Your grievance was properly rejected at the institutional level for the reason(s) outlined below. |
| | | 2) Your grievance is being dismissed at the final appeal level for the reason(s) outlined below. |

| Rationale: | |
|---|---|
| | a) Grievance or appeal did not provide sufficient evidence to suggest that you were personally affected by a Department or facility action or policy. |
| | b) Group grievances are prohibited. |
| | c) Grievance or appeal was not signed with your commitment name and number and/or dated; or contained references to UCC. |
| | d) Grievance or appeal was not legible, understandable, or was not presented in a courteous manner. |
| | e) Grievance or appeal exceeded two pages (was too lengthy). |
| | f) Grievances based upon different events must be presented separately. |
| | g) Grievance or appeal was not submitted timely. |
| | h) You are currently on grievance restriction, and have already filed your allowable grievance. |
| | i) Grievance or appeal must be reviewed through the facility at which the concern initiated. |
| X | j) The issue presented in your grievance has been reviewed and addressed in a previous grievance. |
| | k) Grievances related to the DC-ADM 801, DC-ADM 802, and other select policies must be reviewed using the procedures specified in these policies, rather than through the grievance review process. |
| | l) You have not provided this Office with required documentation for proper review although you were reminded to do so. |
| | m) You failed to appeal to the Facility Manager, although you were reminded to do so. |
| | n) An appeal to final review is not permitted when you fail to comply with submission procedures. |

| Response: | |
|---|---|

Your grievance issue was addressed in 317048 and also in 243159.

| Signature: | Dorina Varner  *Dorina Varner* |
|---|---|
| Title: | Chief Grievance Officer |
| Date: | 7/30/10 |

DLV/MEB
cc:   DC-15/Superintendent Folino
      Grievance Office

CSA
8/9/10
MH



**pennsylvania**
DEPARTMENT OF CORRECTIONS

**TO:**       Mr. Williams, BX-9919
             L Unit C Pod

**FROM:**     Louis S. Folino
             Superintendent

**DATE:**     July 9, 2010

**RE:**       Appeal of Rejected Grievance 321187

I am in receipt of your 6/23/10 appeal of the Grievance Coordinator's rejection of
Grievance number 321187. I have reviewed your grievance packet and the Grievance
Coordinator's rationale for rejecting your grievance, dated 6/17/10.

I concur with the rationale provided to you by the grievance coordinator. Your issues
regarding your sentence/confinement were reviewed and addressed in grievance
number 317048, dated 5/4/10.

Your appeal is hereby denied.

LSF:tls

Cc:          Deputies
             CSA Grievance File at 321187
             DC-15

| Form DC-135A<br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer) *Grievance Coordinator / Mr. D. Davis* | 2. Date: *06 / 23 /10* |
| 3. By: (Print Inmate Name and Number) *Craig Williams # BX-9919*<br><br>_____<br>Inmate Signature | 4. Counselor's Name *Mr. P. Felice* |
| | 5. Unit Manager's Name *Mr. Vidonish* |
| 6. Work Assignment *None* | 7. Housing Assignment *L-C-30* |

8. Subject: State your request completely but briefly. Give details.

Mr. Davis:

Grievance number 321187, is not similar to Grievance number 317o4. The 321187 challenges the 6.5.8 policy itself, and not the issue of illegal confinement on deathrow when you are no longer a 'Capital case.'

The grievance should be permitted to be given a Initial Review Response on the created D.O.C. policy which will be a matter for the federal Court to decide.

Please respond.

cc: C.W. files

9. Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
Print          Sign

Revised July 2000

| Form DC-135A | Commonwealth of Pennsylvania |
| --- | --- |
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS:**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| | |
| --- | --- |
| 1. To: (Name and Title of Officer) Superintendant / Mr. Louis S. Folino | 2. Date: 06 23 10 |
| 3. By: (Print Inmate Name and Number) Craig Williams # BX-5419 _____ Inmate Signature | 4. Counselor's Name Mr. P. Felice |
| | 5. Unit Manager's Name Mr. Vidonish |
| 6. Work Assignment None | 7. Housing Assignment L-C-30 |

8. Subject: State your request completely but briefly. Give details.

Supt. Folino: This is an appeal from a notice to not respond to Grievance # 321167 by D. Davis.

He marks off No 11 claiming the issue that already been addressed. He misconstrued the mechanism of this process. This grievance is challenging the policy under 6.5.6 that hold people in the C.C.U. when they are no longer capital cases.

Grievance no. 317048, dated 5/4/10 was/is contesting individual's decisions to hold people on the C.C.U. as non-capital cases.

This grievance was written on 06/06/10, and numbered with a number on 06/07/10 Since, or discontinued with-out an initial review response on 06/17/10, and given to me not delivered on 06/18/10. I'm requesting an initial review response because that policy that was discovered by me thru grievance no. 321167 will be challenged right in a Federal Court of Law.

cc: C.W. files.

10. Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
| --- | --- |

Staff Member Name _____ / _____    Date _____
                              Print              Sign

Revised July 2000

JA-149

DC-804
Part 3

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**OFFICE OF THE SUPERINTENDENT'S ASSISTANT**
**SCI-GREENE**

DATE:           June 17, 2010

SUBJECT:        Grievance Rejection Form

TO:             Mr. Williams, BX-9919
                L Unit C Pod

FROM:           Dan Davis
                Superintendent's Assistant

| FOR OFFICIAL USE ONLY |
| :---: |
| 321187 |
| GRIEVANCE NUMBER |

The attached grievance is being returned to you because you have failed to comply with the provision(s) of DC-ADM 804, Inmate Grievance System:

1. _____   Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator.

        a. DC-ADM 801 -- Inmate Disciplinary and Restricted Housing Unit Procedures.
        b. DC-ADM 802 -- Administrative Custody Procedures.
        c. Other policies not applicable to DC-ADM 804.

2. _____   The grievance does not indicate that you were personally affected by a Department or facility action or policy.

3. _____   Group grievances are prohibited.

4. _____   The grievance was not signed and/or dated with your commitment name & number.

5. _____   Grievances must be legible, understandable, and presented in a courteous manner.

6. _____   The grievance exceeded the two (2) page limit.  Description needs to be brief.

7. _____   Grievances based upon different events shall be presented separately.

8. _____   The grievance was not submitted within fifteen (15) working days after the events upon which claims are based.

9. _____   You are currently under grievance restriction.  You are limited to one grievance each *15 working days*.  You filed grievance no. _____ on _____
                                                                      Date

10. _____   Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility--_____

11. __X__    The issue(s) presented on the attached grievance has been reviewed and addressed previously in grievance numbers 317048 dated 5/4/10.

Additional Comments: I have revisited the above-described grievance and find your issue regarding your "housing" will not be reviewed at this time for the reason(s) stated above.

DD:tls

Cc:    FILE
       DC-15

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY
321187
GRIEVANCE NUMBER

10/21
CK

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Mr. Dan Davis | S.C.I.-Greene | 06/06/10 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| CRAIG WILLIAMS # BX-9919 | Craig Williams |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| None | L-C-30 |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

I bring forth this grievance to contest the C.C.U. policy under 6.5.8 that keep people on deathrow after their sentences are vacated, or they receive new trials. In my particular case, The d.a. office never appealed the new sentencing phase yet and still, I am illegally confined on deathrow, as a capital case. This policy that was made by then Sec. Horn and followed By Sec. Beard and Superintendant Folino violates my constitutional rights under the 8th and 14th Amendment. I should be free from punishment absent due process of law. I should have the right to gather mitigating evidence in preparation of my sentencing hearing. This is a blatant violation of § 2241 and § 1983.

B. List actions taken and staff you have contacted, before submitting this grievance.

There is no one here that have authority to change D.O.C. policy.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Facility Grievance Coordinator

6/7/2010
Date

*DC-ADM 804, Inmate Grievance System*                                    *Attachment B*
DC-804
Part 2

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE                          GRIEVANCE NO. | 321187

| TO: (Inmate Name & DC No.) | FACILTIY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| Williams, Craig  BX9919 | Greene | LC 30 | 6/7/2010 |

The following is a summary of my findings regarding your grievance:

   Your grievance involves your contesting the Capital Case Policy, 6.5.8, "...that keep people on deathrow after their sentences are vacated, or they receive new trials (sic)." You state that your case involves the D.A. not appealing the new sentencing phase, so that "... still, I am illegally confined on deathrow, as a capital case sic)." You contend that this policy was made by former "...Sec. Horn(sic) and followed by Sec. Beard and Superintendant Folino" and that it violates your constitutional rights under the 8th and 14th Amendments.

   My investigation finds the following. The DOC Legal Department and the Attorney Generals Office have indicated that both the state and federal courts have upheld the DOC policy of housing inmates on the CC Unit while they await re-sentencing.

   Therefore, this grievance is denied. Your constitutional rights have not been violated.

CC:   Deputies
      Grievance Coordinator
      DC 15
      File

*[handwritten across page: Not addressed Tina Friday already answered this grievance issue]*

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| Peter Vidonish | *[signature]* | 6/17/2010 |

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Greene**
(724) 852-2902

DATE: 6 - 9 - 10

SUBJECT: Grievance  321187

TO: Mr. Udenish

FROM: Lorinda Winfield, CO V/
Major of the Guard, Unit Management

Please investigate the attached grievance and prepare a response to the inmate.

When completed, please return the original grievance and your typed response to the tracking clerk for review.  Thank you.

FILE PENDING DUE DATE: 6-20-10

Vicki,

Return to Tracy. Starley

Pita

JA-153

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P. O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY
321187
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: S.C.I - Greene | DATE: 06/06/10 |
|---|---|---|
| Mr. Dan Davis | | |
| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: | |
| CRAIG WILLIAMS # BX-9919 | Craig Williams | |
| WORK ASSIGNMENT: None | HOUSING ASSIGNMENT: L-C-30 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8 1/2" x 11" page). *State all relief that you are seeking.*

I bring forth this grievance to contest the C.C.U. policy under 6.5.8 that keep people on deathrow after their sentences are vacated, or they receive new trials. In my particular case. The d.a. office never appealed the new sentencing phase. Yet and still I am illegally confined on deathrow, as a capital case. This policy that was made by then Sec. Horn and followed By Sec. Beard and Superintendent Folino violates my constitutional rights under the 8th and 14th Amendment. I should be free from punishment absent due process of law. I should have the right to gather mitigating evidence in preparation of my sentencing hearing. This is a blatant violation of § 2241 and § 1983.

B. List actions taken and staff you have contacted, before submitting this grievance.

There is no one here that have authority to change D.O.C. policy.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator          6/7/2010  Date

WHITE - Facility Grievance Coordinator Copy  CANARY - File Copy  PINK - Action Return Copy  GOLDENROD - Inmate Copy
Revised
April 2005

JA-154

# EXHIBIT 5

## DC-141 Part III Program Review
## Committee Action

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>_ Misconduct Appeal _X_ Periodic Review _ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |
|---|---|---|---|---|
| DC Number<br>BX-9919 | Name<br>WILLIAMS, CRAIG | Institution<br>SCI-GRN | Date of Review<br>5/5/08 | No. from PART I<br>N/A |

PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE

**INITIAL REASON FOR REFERRAL:**

On 1-13-95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 5/5/08, C. Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

_x_ Not Applicable    _ Sustain    _ Sustain-Amend    _ Refer Back For Further Study    _ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| P. Palya, UM | | 5/7/08 |
| R. Dietz, LPM | | 5/8/08 |
| A. Menchyk, FCPD | | 5/9/08 |

CC: DC-15, (DC-14), Inmate

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>__ Misconduct Appeal **X** Periodic Review __ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |
|---|---|---|---|---|
| DC Number<br>**BX-9919** | Name<br>**WILLIAMS, CRAIG** | Institution<br>**SCI-GRN** | Date of Review<br>7-1-08 | No. from PART I<br>N/A |

PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE

**INITIAL REASON FOR REFERRAL:**

On 1-13-95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A, 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 7-1-08, C. Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

---

DECISION RELATIVE TO HEARING COMMITTEES VERDICT

_x_ Not Applicable    ___ Sustain    ___ Sustain-Amend    ___ Refer Back For Further Study    ___ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| M. Guyton, UM | | |
| R. Dietz, LPM | | 7/11/0 |
| A. Menchyk, FCPD | | 7-11-08 |

CC: DC-15, (DC-14), Inmate

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>_ Misconduct Appeal _X_ Periodic Review _ Other | | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |
|---|---|---|---|---|---|
| DC Number<br>**BX-9919** | Name<br>**WILLIAMS, CRAIG** | | Institution<br>**SCI-GRN** | Date of Review<br>12-02-08 | No. from PART I<br>N/A |

PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE

**INITIAL REASON FOR REFERRAL:**

On 1-13-95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. ). The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 12-02-08, C. Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the Unit Counselor or the Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

DECISION RELATIVE TO HEARING COMMITTEES VERDICT

_x_ Not Applicable    _ Sustain    _ Sustain-Amend    _ Refer Back For Further Study    _ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| M. Guyton, UM | | |
| R. Dietz, LPM | | |
| A. Menchyk, FCPD | | |
| CC: DC-15, (DC-14), Inmate | | |

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>_ Misconduct Appeal  X  Periodic Review  _ Other | | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |
|---|---|---|---|---|---|
| DC Number<br>BX-9919 | Name<br>WILLIAMS, CRAIG | Institution<br>SCI-GRN | Date of Review<br>4.8.09 | No. from PART I<br>N/A |

**PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 4.8.09, C. Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

 x  Not Applicable     __ Sustain     __ Sustain-Amend     __ Refer Back For Further Study     __ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| M. Guyton, UM | | 4/20/09 |
| D. Yanak, PSS | | 4-20-09 |
| A. Menchyk, FCPD | | 4-22-09 |
| CC: DC-15, (DC-14), Inmate | | |

---

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>__ Misconduct Appeal  X  Periodic Review __ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | |
|---|---|---|---|
| DC Number<br>**BX-9919** | Name<br>**WILLIAMS, CRAIG** | Institution<br>SCI-GRN | Date of Review<br>07.08.09 | No. from PART I<br>N/A |

**PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI – A. 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 07.08.09, C. Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

---

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

x  Not Applicable  __ Sustain  __Sustain-Amend  __ Refer Back For Further Study  __ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| M. Guyton, UM | | 7/14/09 |
| R. Dietz, LPM | | 7/14/09 |
| A. Menchyk, FCPD | | 7-28-09 |
| CC: DC-15, (DC-14), Inmate | | |

| DC-141 Part 3<br>Program Review<br>Committee Action | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | Revised 6/02 |
|---|---|---|---|---|
| ☐ Misconduct Appeal | ☐ Periodic Review | ☐ Other | | |
| DC Number<br>BX9919 | Name<br>WILLIAMS, Craig | Facility<br>GREENE | Date of Review<br>09/17/09 | No. from DC-141 Part 1<br>A548795 |

### Program Review Committee's Decision and Rationale

DATE PLACED IN RHU: 07/23/09 REVIEW #1 CURRENTLY IN: DC 09/20/2009

| REASON FOR CONFINEMENT | COMMENTS AND CONCERNS |
|---|---|
| MISCONDUCT #A548795  30 DAYS<br>  B38  08/22/09 TO 09/20/09<br><br>MISCONDUCT #A566852  30 DAYS<br>  B38  07/23/09 TO 08/21/09<br><br><br>      REVIEW NEEDED<br>Psychology<br>Security<br>Other (specify)<br><br>REASON FOR REVIEW: | PRC review of DC<br>Status-<br>PRC votes to<br>Revert to CC Status<br>Effective 9-17-09 grant<br>Credit for time Served |

### PRC REVIEW RESULTS

| Refused    ATA    Medical | Schedule AC hearing: |
|---|---|
| No Problems or Concerns: | Review: |
| Revert to ~~AC~~ CC on:  9-17-09 | Release Date: 9-17-09    To: G or L CC lin? |

### REQUESTS/PRIVILEGES

| TV: | Granted | Denied | GLP: | Granted | Denied |
|---|---|---|---|---|---|
| Radio: | Granted | Denied | Phone Call: Granted | | Denied |
| Property: | Granted | Denied | Other: | Granted | Denied |
| (specify) | | | (specify) | | |
| Commissary: | | EXTENDED | BASIC | | |

### Decision Relative to Hearing Examiner's Verdict

| ☐ Not Applicable | ☐ Sustain | ☐ Sustain-Amend | ☐ Refer Back for Further Study | ☐ Exonerate Inmate |
|---|---|---|---|---|

| Names of Program Review Committee Members | | Signatures | Date |
|---|---|---|---|
| M Caporra | DSCS | MC | 09/17/2009 |
| M. Smith | CAM II | | 09/17/2009 |
| R. McCombia | CAM I | MC | 09/17/2009 |

WHITE – DC-15    YELLOW–INMATE    PINK – STAFF MEMBER REPORTING MISCONDUCT    GOLDENROD – DSFM

| DC-141 PART III | COMMONWEALTH OF PENNSYLVANIA | | | | |
|---|---|---|---|---|---|
| PROGRAM REVIEW COMMITTEE ACTION | DEPARTMENT OF CORRECTIONS | | | | |
| __ Misconduct Appeal __X__ Periodic Review __ Other | | | | | |

| DC Number BX-9919 | Name WILLIAMS, CRAIG | Institution SCI-GRN | Date of Review 11.10.09 | No. from PART I N/A |
|---|---|---|---|---|

**PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. J. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 11.10.09, C. Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

__x__ Not Applicable    __ Sustain    __ Sustain-Amend    __ Refer Back For Further Study    __ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| M. Guyton, UM | | 11/12/09 |
| R. Dietz, LPM | | 11/13/09 |
| W. Bupka, LT | | 11-16-09 |

CC: DC-15, (DC-14), Inmate

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>_ Misconduct Appeal  X  Periodic Review _ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |

| DC Number<br>BX-9919 | Name<br>WILLIAMS, CRAIG | Institution<br>SCI-GRN | Date of Review<br>02.04.10 | No. from PART I<br>N/A |
|---|---|---|---|---|

**PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 02.04.10, Craig Williams was called by the Program Review Committee for his review.  He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

x_ Not Applicable  _ Sustain  _ Sustain-Amend  _ Refer Back For Further Study  _ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date. |
|---|---|---|
| M. Guyton, UM | | 2/4/10 |
| R. Dietz, LPM | | 2/10/10 |
| A. Menchyk, FCPD | | 2/23/10 |
| CC: DC-15, (DC-14), Inmate | | |

**DC-141 PART III**                    **COMMONWEALTH OF PENNSYLVANIA**
PROGRAM REVIEW COMMITTEE ACTION        **DEPARTMENT OF CORRECTIONS**
__ Misconduct Appeal X Periodic Review __ Other

| DC Number BX-9919 | Name WILLIAMS, CRAIG | Institution SCI-GRN | Date of Review 05.20.10 | No. from PART I N/A |
|---|---|---|---|---|

PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 05.20.10, Craig Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

_x_ Not Applicable    __ Sustain    __ Sustain-Amend    __ Refer Back For Further Study    __ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| P. Vidonish, UM | *P. Vidonish* | 5/25/10 |
| R. Dietz, LPM | *R. Dietz* | 5/24/10 |
| A. Menchyk, FCPD | *A. Menchyk* | 5/29/10 |
| CC: DC-15, (DC-14), Inmate | | |

---

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>_ Misconduct Appeal  X Periodic Review _ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |
|---|---|---|---|---|
| DC Number<br>BX-9919 | Name<br>WILLIAMS, CRAIG | Institution<br>SCI-GRN | Date of Review<br>08.04.10 | No. from PART I<br>N/A |

**PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 08.04.10, Craig Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

X Not Applicable    _ Sustain    _ Sustain-Amend    _ Refer Back For Further Study    _ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| P. Vidonish, UM | *(signature)* | 8/4/10 |
| R. Dietz, LPM | *(signature)* | 8/5/10 |
| A. Menchyk, FCPD | *(signature)* | 8 5 10 |

CC: DC-15, (DC-14), Inmate

| DC-141 PART III | COMMONWEALTH OF PENNSYLVANIA | | | |
|---|---|---|---|---|
| PROGRAM REVIEW COMMITTEE ACTION | DEPARTMENT OF CORRECTIONS | | | |
| __ Misconduct Appeal  X  Periodic Review __ Other | | | | |

| DC Number BX-9919 | Name WILLIAMS, CRAIG | Institution SCI-GRN | Date of Review 11.04.10 | No. from PART I N/A |
|---|---|---|---|---|

**PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 11.04.10, Craig Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months:

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

_X_ Not Applicable    __ Sustain    __ Sustain-Amend    __ Refer Back For Further Study    __ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| P. Vidonish, UM | *Richard* | 11/5/10 |
| R. Dietz, LPM | | 12/J/lo |
| R. McCombie, CAM1 | *R McC* | 11/5/10 |

CC: DC-15, (DC-14), Inmate

Oct. 15. 2013 2:02PM Case 2:12-cv-00944-MRH-LPL   Document 38-5   Filed 04/25/13   No. 8283   Page 213 of 18 14

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>__ Misconduct Appeal _X_ Periodic Review __ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |
|---|---|---|---|---|
| DC Number<br>BX-8919 | Name<br>WILLIAMS, CRAIG | Institution<br>SCI-GRN | Date of Review<br>02.04.11 | No. from PART I<br>N/A |

**PROGRAM REVIEW COMMITTEE'S DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. J. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 02.04.11, Craig Williams was called by the Program Review Committee for his review.  He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

_x_ Not Applicable     __ Sustain     __ Sustain-Amend     __ Refer Back For Further Study     __ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| P. Vidonish, UM | *Vidonish* | 2/9/11 |
| R. Dietz, LPM | | 2/10/11 |
| R. McCombie, CAM1 | *R MC* | 2/10/11 |

CC: DC-15, (DC-14), Inmate

Oct. 15. 2012 12:04PM   Case 2:12-cv-00944-MRH-LPL   Document 38-5   Filed 04/25/13   Page 14 of 18   No. 8200   P. 15

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>_ Misconduct Appeal _X_ Periodic Review _ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |
|---|---|---|---|---|
| DC Number<br>BX-9919 | Name<br>WILLIAMS, CRAIG | Institution<br>SCI-GRN | Date of Review<br>05.20.11 | No. from PART I<br>N/A |

**PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. j. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 05.20.11, Craig Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

_x_ Not Applicable   _ Sustain   _ Sustain-Amend   _ Refer Back For Further Study   _ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| P. Vidonish, UM | *Villord* | 5/23/11 |
| R. Dietz, LPM | | 5/24/11 |
| R. McCombie, CAM1 | *RMG* | 5/24/11 |
| CC: DC-15, (DC-14), Inmate | | |

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>__ Misconduct Appeal _X_ Periodic Review __ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |

| DC Number<br>BX-9919 | Name<br>WILLIAMS, CRAIG | Institution<br>SCI-GRN | Date of Review<br>08.10.11 | No. from PART I<br>N/A |
|---|---|---|---|---|

PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE.

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. J. The policies of the institution, as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 08.10.11, Craig Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

---

DECISION RELATIVE TO HEARING COMMITTEES VERDICT

_x_ Not Applicable    __ Sustain    __ Sustain-Amend    __ Refer Back For Further Study    __ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| P. Vidonish, UM | *P. Vidonish* | 8/11/1 |
| R. Dietz, LPM | | 8/17/11 |
| R. McComble, CAM1 | *R. M. C. G.* | 8/17/11 |

CC: DC-15, (DC-14), Inmate

| DC-141 PART III<br>PROGRAM REVIEW COMMITTEE ACTION<br>__ Misconduct Appeal _X_ Periodic Review __ Other | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | |

| DC Number<br>BX-9919 | Name<br>WILLIAMS, CRAIG | Institution<br>SCI-GRN | Date of Review<br>02.08.12 | No. from PART I<br>N/A |
|---|---|---|---|---|

**PROGRAM REVIEW COMMITTEES DECISION AND ITS RATIONALE**

**INITIAL REASON FOR REFERRAL:**

On 01.13.95, C. Williams was received as an administrative transfer from SCI-Huntingdon. Because he was a capital case, he was placed in administrative custody in accordance with the DC-ADM 802 Section VI - A. 1. J. The policies of the institution; as they relate to capital case inmates, were explained to him.

**PRC COMMENTS:**

On 02.08.12, Craig Williams was called by the Program Review Committee for his review. He declined his review by the PRC on this date.

A review of Mr. Williams' Cumulative Adjustment Record for the past quarter shows no adjustment problems noted by the counselor or Unit Officers.

In view of the Department of Corrections' policy, as it relates to capital cases, it was recommended that Mr. Williams be continued in capital case custody.

Next review will be in three months.

**DECISION RELATIVE TO HEARING COMMITTEES VERDICT**

_x_ Not Applicable __ Sustain __ Sustain-Amend __ Refer Back For Further Study __ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| P. Vidonish, UM | *[signature]* | 2/9/12 |
| R. Dietz, LPM | *[signature]* | 2/13/12 |
| B. Eberenz, FSSC | *[signature]* | 2/13/12 |

CC: DC-15, (DC-14), Inmate

| DC-141 Part 3 Program Review Committee Action | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS | | | Revised 6/02 |
|---|---|---|---|---|
| ☐ Misconduct Appeal    ☐ Periodic Review    ☐ Other | | | | |
| DC Number | Name | Facility | Date of Review | No. from DC-141 Part 1 |
| BX9919 | WILLIAMS, Craig | GREENE | 05/29/12 | B406630 |

**Program Review Committee's Decision and Rationale**

PRC REVIEW OF OTHER REPORT SUBMITTED BY LT. ARMSTRONG ON 05/23/2012, DC ADM 802 1,A.1.c, THE INMATE IS A DANGER TO HIMSELF OR OTHERS.

PRC Review - Due to Sep/Admn Issues - Im is plced on AC - Unit Team directed To work with security To consider/ process for admin / sep transfer.

Plce AC (Review 90 days) if still at Green.

| Decision Relative to Hearing Examiner's Verdict | | | |
|---|---|---|---|
| ☐ Not Applicable    ☐ Sustain    ☐ Sustain-Amend    ☐ Refer Back for Further Study    ☐ Exonerate Inmate | | | |

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| Lorinda Winfield, DSFM /M. D. A(che, C. Arm | | 05/29/2012 |
| Jeffrey Rogers, CCPM | | 05/29/2012 |
| Robert McCombie, CAM I | | 05/29/2012 |

WHITE – DC-15        YELLOW – INMATE        PINK – STAFF MEMBER REPORTING MISCONDUCT        GOLDENROD – DSFM

JA-171

| DC-141 Part 3 | COMMONWEALTH OF PENNSYLVANIA | | | Revised 6/02 |
|---|---|---|---|---|

Program Review
Committee Action

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

☐ Misconduct Appeal    ☐ Periodic Review    ☐ Other

| DC Number | Name | Facility | Date of Review | No. from DC-141 Part 1 |
|---|---|---|---|---|
| BX9919 | WILLIAMS, Craig | GREENE | 08/21/12 | B406630 |

**Program Review Committee's Decision and Rationale**

DATE PLACED IN RHU: 05/04/12  REVIEW #1  CURRENTLY IN: AC

| REASON FOR CONFINEMENT | COMMENTS AND CONCERNS |
|---|---|
| #B406630<br><br>THE INMATE IS A DANGER TO HIMSELF OR OTHERS. | PRC Review -<br>Informed IM Sep/Tran<br>Approved - Awaiting Transfer<br>Requested GLP Denied.<br><br>Continue AC.<br>Review 90 days. |

| REVIEW NEEDED | |
|---|---|
| Psychology    05/08/12<br>Security<br>Other (specify) | |

REASON FOR REVIEW:

**PRC REVIEW RESULTS**

| Refused    ATA    Medical | Schedule AC hearing: |
|---|---|
| No Problems or Concerns: | Review:  11/16/2012 |
| Reverted to AC on: | Release Date:              To: |

**REQUESTS/PRIVILEGES**

| TV: | Granted    Denied | GLP: | Granted    Denied    month |
|---|---|---|---|
| | | | 3 per |
| Radio: | Granted    Denied | Phone Call: Granted    Denied | per |
| Property: | Granted    Denied | Other: | Granted    Denied |
| (specify) | | (specify) | |
| Commissary: | EXTENDED    BASIC | | |

**Decision Relative to Hearing Examiner's Verdict**

☐ Not Applicable    ☐ Sustain    ☐ Sustain-Amend    ☐ Refer Back for Further Study    ☐ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| Lorinda Winfield, DSFM | | 08/21/2012 |
| Jeffrey Rogers, CCPM | | 08/21/2012 |
| Wallace Leggett, Major of Unit Management | | 08/21/2012 |

# EXHIBIT 6

## Declaration of Shirley R. Moore-Smeal

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG WILLIAMS,<br>    Plaintiff, | : | |
| | : | Civil Action No. 12-944 |
| v. | : | |
| | : | |
| JOHN WETZEL, et al.<br>    Defendants | : | |
| | : | |

### DECLARATION OF SHIRLEY R. MOORE SMEAL

I, **SHIRLEY R. MOORE SMEAL**, hereby declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following statements are true, correct, and based upon my personal knowledge:

1.    I am presently employed by the Pennsylvania Department of Corrections ("Department") as an Executive Deputy Secretary. From August 21, 2010 to January 10, 2011, I was the Acting Secretary of the Department. I have held various other positions within the Department for approximately twenty-six years.

2.    As the Executive Deputy Secretary of the Department, I am familiar with the standard policies and procedures followed throughout all of the facilities within the state prison system, including all applicable regulations and the reasons why they are in effect.

3.    I am familiar with Department Policy 6.5.8, "Capital Case Administration," and matters related to the housing of Capital Case inmates.

4.    A Capital Case inmate is an inmate (1) physically committed to the Department under a sentence of Capital Punishment; (2) pending sentencing under a jury recommendation for Capital Punishment; or (3) whose sentence of Capital Punishment has been vacated, but is awaiting re-sentencing where a sentence of Capital Punishment may be re-imposed.

5.    A Capital Case inmate whose sentence has been set aside for trial error remains confined in the Capital Case Unit ("CCU") in Administrative Custody ("AC") under the conditions as set forth in the Department Policy DC-ADM 802, "Administrative Custody Procedures."

6.    As set forth below, the Department has legitimate penological reasons for its policy of housing an inmate in AC in the CCU where the possibility of re-imposition of the death sentence exists.

7.    Capital Case inmates constitute a reasonable classification of inmates who likely have a history of violent behavior, who likely pose a heightened threat to the safety and security of correctional officers and other inmates, and who are more likely than other inmates to disregard prison rules and regulations.

2

8.    If such an inmate were released from the CCU to general population, despite the possibility of the re-imposition of a sentence of Capital Punishment, this inmate may attempt to escape from the facility due to his confinement under conditions less restrictive than those that exist in the CCU.

9.    With the increased privileges available to inmates in general population and the lessened restrictions, it is reasonably likely that such an inmate could use these freedoms to his or her advantage to retaliate against other inmates or staff members against whom the inmate maintains animosity, thereby posing a substantial and demonstrable risk of physical harm to facility staff and/or other inmates.

10.    Correspondingly, it is reasonably likely that an inmate released to general population for whom a sentence of Capital Punishment is still possible could attempt to obtain instruments to craft makeshift weapons for purposes of effectuating an escape or inflicting physical injury upon staff, other inmates, or himself/herself, under the assumption that he or she has "nothing to lose."

11.    An inmate no longer housed in the CCU in AC with the possibility of the death penalty unresolved could be more likely to violate facility rules and regulations for the same reason.

3

12.  · The release of a Capital Case inmate for whom the death penalty is still a possibility into general population would directly and adversely affect the safety and security of the inmates, staff, and the facility for the aforementioned reasons, which, while not an exhaustive list, constitute the most salient bases for the Department's Policy.

April ____, 2013

_8AM Smeal_

Shirley R. Moore Smeal
Executive Deputy Secretary
Department of Corrections
Commonwealth of Pennsylvania

4

Case 2:12-cv-00944-MRH-LPL   Document 38-6   Filed 04/25/13   Page 6 of 6

| FORM DC-141   PART 1 | COMMONWEALTH OF PENNSYLVANIA | | | | | |
|---|---|---|---|---|---|---|
| Rev 8/05 | DEPARTMENT OF CORRECTIONS | | | B 406630 | | |

☐ MISCONDUCT REPORT   ☒ OTHER   ☐ DC-ADM 801   INFORMAL RESOLUTION

| DC Number | Name | Facility | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| BX9919 | Williams, Craig | SCI-GRN | 1120 | 5/23/2012 | 5/23/2012 |
| Quarters | Place of Incident | | | | |
| EA57 | Dining #3 | | | | |

OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | CO1 Pawlowski | X | | | | | |
| | | | | | | | |
| | | | | | | | |

MISCONDUCT CHARGE OR OTHER ACTION DC Adm 802 1A1C Inmate is a danger to self or others

STAFF MEMBER'S VERSION

Inmate is being placed AC due to separation needs from a female staff member at SCI Greene. Inmate made inappropriate
comments to a staff member and there is a need for separation consideration.

IMMEDIATE ACTION TAKEN AND REASON   *You will be on AC status pending
Security & PRC review.*

| PRE-HEARING CONFINEMENT | | | | FORMS GIVEN TO INMATE |
|---|---|---|---|---|
| | IF YES | | | ☒ REQUEST FOR WITNESSES AND REPRESENTATION   ☒ INMATE'S VERSION |
| ☐ YES | TIME | DATE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
| ☒ NO | 1310 | 5·23·12 | | DATE 5/23/12   TIME 24 HOUR BASE 2015 |

REPORTING STAFF MEMBER SIGNATURE AND TITLE
Lt. Thomas Armstrong, Security Lt

Signature of Person Serving Notice

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY |
|---|---|---|
| DATE        TIME | | ☒ CLASS 1   ☐ CLASS 2 |
| ASAP | | |

NOTICE TO INMATE
You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you
say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the
hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you
are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15        YELLOW — Inmate        PINK — Reporting Staff Member        GOLDENROD --- Deputy Superintendent Facility Management

# EXHIBIT 7

## Sentence Status Summary

Case 2:12-cv-00944-MRH-LPL   Document 38-7   Filed 04/25/13   Page 2 of 7

| DC-16E | | COMMONWEALTH OF PENNSYLVANIA |
|--------|--------|--------|
| SENTENCE STATUS SUMMARY | | DEPARTMENT OF CORRECTIONS |

## 1.  REFERENCES AND IDENTIFICATION

| DOC Number BX9919 | Commitment Name CRAIG WILLIAMS | *LB-28* | PBPP No 7971R | SID No 14819291 | FBI Number | Phila Photo # 602192 |
|---|---|---|---|---|---|---|
| Date of Birth 04/28/1964 | Place of Birth PHILADELPHIA   PA   USA | | | | Race B | Sex M |

## 2.  SENTENCE SUMMARY

| Sent Date | County | Indictments | | Sent Type | Minimum | | | Maximum | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Y | M | D | Y | M | D |
| 06/17/1988 | PHILADELPHIA | CP#2585/0587 | | Execution | | | | | | |
| Plea: | Found Guilty | OTN: M3069216 | Judge: STILES,MICHAEL R | | | | | | | |
| Offense: | MURDER | | | | | | | | | |

| Controlling Minimum Date | Execution | | Reentered from Previous DOC#: | AM9271 |
|---|---|---|---|---|
| Controlling Maximum Date | Execution | | New Maximum - PV | |

**Non-Incarcerated Offenses**
06/17/1988, PHILADELPHIA, CP#2585/0587, STILES,MICHAEL R
   CP#2583 - PIC - SENTENCE DEF CP#2584 - REAP - SENTENCE DEF
Comments:

**Summary or Remarks on Sentence**
08/28/2002: DC-16E generated due to conversion from DC-16 D.
Inmate was also sentenced CP#2583 CC 2Y6M-5Y - PIC and CP#2584 CC 1Y to 2Y - REAP (both have expired).

Inmate Number: BX9919 - CRAIG WILLIAMS     Version 1   Closed   8/28/2002 3:38:30 PM
Distribution: Inmate  PBPP  PSP  BIS  Counselor  DC-15  Time File
Page 1 of 3

JA-180

### 3.  SENTENCE STRUCTURE

**Commitment Credit**
04/25/1987 to 01/29/1990

| Item | Computation 1 | Computation 2 | | |
|---|---|---|---|---|
| Indictments Included | CP#2566/0587 | | | |
| Effective Date | 04/25/1987 | | | |
| Expiration of Minimum | EXECUTION | | | |
| Expiration of Maximum | EXECUTION | | | |
| Custody for Return -- PV | | | | |
| Delinquent Time | | | | |
| Backtime Credit | | | | |
| Backtime Owed | | | | |
| New Maximum -- PV | | | | |
| Sentence Computation Date | 08/28/2002 | | | |
| Basis for Computation | Initial | | | |
| Total Sentence | EXECUTION | | | |
| Status | Active | | | |

Inmate Number: BX9919 - CRAIG WILLIAMS    Version 1   Closed   8/28/2002 3:38:30 PM
Distribution; Inmate  PBPP  PSP  BIS  Counselor  DC-15  Time File
Page 2 of 3

JA-181

## 4. DETAINERS

| Number | Date | From | Indict-Warrant Nos. | OTN | Type |
|--------|------|------|---------------------|-----|------|
|        |      |      |                     |     |      |
| None   |      |      |                     |     |      |

| Detainer Remarks | | |
|------------------|--------------|--------------------------------------------|
| Detainer # | Date Deleted | Remarks  (for those deleted since last DC16) |
| None |  |  |

## 5. PRIOR DOC NUMBERS

| AM9271 | | | | | | | |
|--------|--|--|--|--|--|--|--|

## 6.   FINES, COSTS AND RESTITUTION AT TIME OF RECEPTION

| Date | County | Indictment | Fines | Costs | Restitution |
|------|--------|------------|-------|-------|-------------|
|      |        |            |       |       |             |

## 7.  ACTIONS: BOARD OF PARDONS

| Decision Date | File Number | Action | Comments |
|---------------|-------------|--------|----------|
|               |             |        |          |

Last Modified by:  tfriday

Inmate Number: BX9919 - CRAIG WILLIAMS    Version 1  Closed   6/28/2002 3:38:30 PM
Distribution: Inmate  PBPP  PSP  BIS  Counselor  DC-15  Time File
Page 3 of 3

JA-182



# COMMONWEALTH OF PENNSYLVANIA
## DC16E - SENTENCE STATUS SUMMARY    DEPARTMENT OF CORRECTIONS

me: Craig  Williams               Inmate #: BX9919          Closed Version 2  Dated 5/3/2012 2:48:24

## 1.  REFERENCES AND IDENTIFICATION

| OC #  X9919 | Commitment Name  CRAIG  WILLIAMS | PBPP #  7971R | SID #  14819291 | FBI # | Phila Photo  602192 |
|---|---|---|---|---|---|
| OB  /28/1964 | Place of Birth  PHILADELPHIA   PA USA | | | Race  B | Sex  M |

## 2.  SENTENCE SUMMARY

| Sent Date | County/State/Federal | Indictments | Sent Type | Minimum | | | Maximum | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Y | M | D | Y | M | D |
| 5/01/2012 | Philadelphia | CP#0525631 CT4/1987 | | Life | | | Life | | |
| **Plea:** | Found Guilty | OTN: M3069216 | **Judge:** LERNER, BENJAMIN | | | | | | |
| **nse:** CC2502A - MURDER (1ST DEGREE) | | | | | | | | | |
| 5/01/2012 | Philadelphia | CP0525631 CT1/1987 | CC | 2 | 6 | | 5 | | |
| **Plea:** | Found Guilty | OTN: M3069216 | **Judge:** LERNER, BENJAMIN | | | | | | |
| **nse:** CC0907 - POSSESSING INSTRUMENT OF CRIME | | | | | | | | | |
| 5/01/2012 | Philadelphia | CP0525631 CT3/1987 | CC | 1 | | | 2 | | |
| **Plea:** | Found Guilty | OTN: M3069216 | **Judge:** LERNER, BENJAMIN | | | | | | |
| **nse:** CC2705 - RECKLESS ENDANGERMENT | | | | | | | | | |

| | | | |
|---|---|---|---|
| eception Date | 02/23/1989 | Reentered from DOC # | AM9271 |
| ontrolling Minimum Date | LIFE | New Maximum - PV | |
| ontrolling Maximum Date | LIFE | True Minimum Expiry Date | |
| RRI Minimum Expiry Date | | | |

## ummary or Remarks on Sentence

Version 2 created to reflect resentencing from Execution to Life per Court Commitment dated 05/01/2012.
Credit as follows:  04/25/1987 to 01/29/1990 as given on original commitment, and 02/22/1992 to 05/01/2012
which was date of reception to resentencing date.

## 3.  SENTENCE STRUCTURE

**ommitment Credit**

omputation 1    CP#0525631 CT4/1987 : 04/25/1987 to 01/29/1990, 02/22/1992 to 05/01/2012

omputation 2    CP0525631 CT1/1987 : 04/25/1987 to 01/29/1990, 02/22/1992 to 05/01/2012

me: Craig  Williams Case 2:12-cv-00944-MRH Inmate #:b0cfe919 38-7  Filed:)Version No 2 Dated 5/3/2012 2:48:24

### 3.   SENTENCE STRUCTURE (Contn'd)

omputation 3        CP0525631 CT3/1987 : 04/25/1987 to 01/29/1990, 02/22/1992 to 05/01/2012

ail/Escape/Interruption Time Data

one

| Item | Computation 1 | Computation 2 | Computation 3 | |
|---|---|---|---|---|
| dictments cluded | CP#0525631 CT4/1987 | CP0525631 CT1/1987 | CP0525631 CT3/1987 | |
| f Date | 05/17/1989 | 05/17/1989 | 05/17/1989 | |
| xpiration of inimum | Life | 11/17/1991 | 05/17/1990 | |
| xpiration of aximum | Life | 05/17/1994 | 05/17/1991 | |
| ustody r Return V | | | | |
| elinquent me | | | | |
| acktime redit | | | | |
| acktime wed | | | | |
| ew aximum V | | | | |
| entence omputation ate | 05/03/2012 | 05/03/2012 | 05/03/2012 | |
| asis for omputation | Initial | Underlapping Concurrent | Underlapping Concurrent | |
| otal entence | Life | 2Y6M - 5Y | 1Y - 2Y | |
| atus | Active | Inactive | Inactive | |

me: Craig  Williams Case 2:12-cv-00944-MRH  Inmate# oBX0918 38-7  Filed Version No 2 Dated 5/3/2012 2:48:24

## 4.   NON-INCARCERATED OFFENSES

| Sent Date | County/State/Federal | Indictments |
|-----------|---------------------|-------------|
| None      |                     |             |

## 5.   DETAINERS

**ctive Detainers**

| etainer# | Date | Agency | Agency Identification | OTN | Type |
|----------|------|--------|----------------------|-----|------|
|          |      |        |                      |     |      |
|          | None |        |                      |     |      |

**eleted Detainers (For those deleted since last DC16)**

| etainer# | Date Deleted | Agency | Agency Identification | OTN | Type |
|----------|--------------|--------|----------------------|-----|------|
| one      |              |        |                      |     |      |
|          | None         |        |                      |     |      |

## 6.   PRIOR DOC NUMBERS

| M9271 |   |   |   |   |   |   |   |   |
|-------|---|---|---|---|---|---|---|---|

## 7.   ACTIONS: BOARD OF PARDONS

| ecision ate | File Number | Action | Comments |
|-------------|-------------|--------|----------|
| one         |             |        |          |

st Modified By: Moss, Tracey D

gned Off By: Filitsky, Rebekah S.                    Institution:  Greene

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRAIG WILLIAMS          :     CIVIL ACTION

     PLAINTIFF            :     No. 12-944

                        :

    V.                 :

                        :

JOHN E. WETZEL, ET AL.      :     Ch. Mag. Judge

     DEFENDANTS         :     Lisa Pupo Lenihan

                        :

**FILED**

MAY 24 2013

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

### CONCISE STATEMENT OF MATERIAL FACTS

Now Comes Plaintiff Craig Williams, acting as attorney, Pro-se of record in this civil matter whom submits the  following Concise Statement of Material Facts related to the case in chief:

1. Plaintiff notification DC-141 Part 1 No. A571075 "Other" explaining Plain-
   tiff death sentence being vacated and sentenced to life.

2. P.R.C. DC-141 Part 3 hearing and Plaintiff response, dated May 8th 2012.

3. Plaintiff notification DC-141 Part 1 "Other" No. B 406630 pertaining to
   a separate matter which is dated May 23rd 2012.

4. P.R.C. DC-141 Part 3 hearing with no response from Plaintiff dated
   May 29th 2012.

5. Plaintiff periodic (90 day) review pertaining to DC-141 Part 1 No. B406630.

6. Plaintiff affidavit concerning him working for three years as Capital Case
   on the Block.

Date: 5|23|13

Respectfully Submitted

*Craig Williams*

Craig Williams #BX-9919
10745, Route 18
Albion, PA 16475-0002

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Concise Statement of
Material Facts are served via first class mail to the parties indicated
below:


OFFICE OF ATTORNEY GENERAL
Kemal Alexander Merich
Sr. Deputy Atty. General
6th Floor, Manor Complex
Pittsburgh, PA 15219


Date: 5|23|13

Respectfully Submitted

Craig Williams

Craig Williams #BX-9919
10745, Route 18
Albion, PA 16475-0002


(16)

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG WILLIAMS | : | CIVIL ACTION |
| PLAINTIFF | : | No. 12-944 |
| | : | |
| V. | : | |
| | : | |
| JOHN E. WETZEL, ET AL. | : | CH. Mag. Judge |
| DEFENDANTS | : | Lisa Pupo Lenihan |
| | : | |

APPEXDIX

| Exhibit | Description |
|---|---|
| 1 | DC-ADM 802 DC-141 Part 1 "Other" document; P.R.C. DC-141 Part 3 Hearing Document; DC-141 Part 1 "Other" document concerning a separate matter, P.R.C. DC-141 Part 3 hearing; P.R.C. DC-141 Part 3 periodic review. |
| 2 | Plaintiff Affidavit. |

(17)