**Nos. 14-1469, 15-1390 (consolidated)**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

**Craig Williams,**

*Appellant*,

-against-

**Secretary Pennsylvania Department of Corrections; Dorina Varner, Chief Grievance Officer; Tina Friday, Records Officer, in her Individual and Official Capacity; Jeffrey R. Rogers, Manager, in his Individual and Official Capacity; Tracy Shawley, Grievance Coordinator, in her Individual and Official Capacity; and Louis Folino, in his Individual and Official Capacity,**

*Appellees*.

---

**Shawn Walker,**

*Appellant*,

-against-

**Michael A. Farnan; Secretary Pennsylvania Department of Corrections; Superintendent Graterford SCI; Cindy G. Watson, and others to be named later,**

*Appellees*.

---

On Appeal from the United States District Court
for the Western District of Pennsylvania, No. 2:12-cv-00944
Before the Honorable Mark R. Hornak, and
On Appeal from the United States District Court
for the Eastern District of Pennsylvania, No. 2:07-cv-04977
Before the Honorable R. Barclay Surrick

---

**CONSOLIDATED REPLY BRIEF OF APPELLANTS**

*-Counsel for Appellants on Inside Cover-*

**James J. Bilsborrow, Esq.**
**Weitz & Luxenberg, P.C.**
**700 Broadway**
**New York, NY 10003**
**T: (212) 558-5500**
**F: (646) 293-7937**
*jbilsborrow@weitzlux.com*

*Counsel for Appellants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................3

CONCLUSION ......................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Commonwealth v. Williams*,
   782 A.2d 517 (Pa. 2001) (*Williams II*) .................................................2

*Commonwealth v. Williams*,
   980 A.2d 510 (Pa. 2009) (*Williams III*) ................................................2

*Davis v. Ayala*,
   --- U.S. ---, 135 S. Ct. 2187 (2015) ......................................................1

*Fantone v. Latini*,
   780 F.3d 184 (3d Cir. 2015) ..................................................................7

*Griffin v. Vaughn*,
   112 F.3d 703 (3d Cir. 1997) ..................................................................7

*Harden-Bey v. Rutter*,
   524 F.3d 789 (6th Cir. 2008) ................................................................7

*Powell v Weiss*,
   757 F.3d 338 (3d Cir. 2014) ............................................................4, 5

*Prieto v. Clarke*,
   780 F.3d 245 (4th Cir. 2015) ................................................................6

*Sandin v. Conner*,
   515 U.S. 472 (1995) .........................................................................4, 5

*Shoats v. Horn*,
   213 F.3d 140 (3d Cir. 2000) .......................................................1, 2, 4, 5

*Wilkerson v. Goodwin*,
   774 F.3d 845 (5th Cir. 2014) ................................................................6

*Wilkinson v. Austin*,
   545 U.S. 209 ........................................................................................3

**STATUTES**

61 Pa. Cons. Stat. § 4303 ...................................................................................6, 8

# INTRODUCTION

The crux of this case is whether the Due Process Clause allows the State of Pennsylvania to house a prisoner in solitary confinement on death row indefinitely, and for years—in one case for over six years—after that prisoner's death sentence has been vacated and the State has chosen to forego an appeal.

Appellants Craig Williams and Shawn Walker were convicted of murder and sentenced to death. Both successfully overturned their death sentence on collateral review. In each instance, the State declined to appeal. As a result, Appellants were no longer sentenced to death. Because Appellants chose to appeal their respective determinations of guilt, however, each remained on death row awaiting final disposition of their collateral appeal. Craig Williams waited six years in solitary confinement; Shawn Walker waited over four.

There is a growing recognition among the social science community of the serious psychological damage caused by long-term solitary confinement. Justice Kennedy recently acknowledged that "[y]ears on end of near-total isolation exacts a terrible price." *Davis v. Ayala*, --- U.S. ---, 135 S. Ct. 2187, 2210 (2015) (Kennedy, J., concurring). Indeed, fifteen years ago this Court found that eight years of solitary confinement under conditions strikingly similar to that which occurred here was sufficient to constitute "atypical and significant hardship" giving rise to a state-created liberty interest. *Shoats v. Horn*, 213 F.3d 140, 144 (3d

Cir. 2000). Certainly, what we have learned about solitary confinement since *Shoats* only reinforces that court's conclusion.

The confinement that Appellants endured following vacatur of their death sentences was unjust.[1] Craig Williams and Shawn Walker had a state-created

---

[1] Appellees note that on February 4, 2015, this Court "directed the parties to provide, in their forthcoming briefs, certain details about the vacation of Williams' death sentence and whether its re-imposition was a 'realistic possibility' between July 11, 2006, and May 1, 2012." Appellees' Br. at 8 n.7. Although this order was issued prior to undersigned counsel's appointment, the issue should have been addressed in Appellants' opening brief and counsel requests leave to do so now.

The Pennsylvania Supreme Court vacated Mr. Williams' death sentence because, in lieu of conducting a hearing and making independent findings of fact on contested mitigation evidence, the PCRA court improperly adopted the reasoning in the government's motion to dismiss. *See Commonwealth v. Williams*, 782 A.2d 517, 521-22 (Pa. 2001) (*Williams II*). In particular, Williams had proffered affidavits from family members and medical professionals attesting to a traumatic upbringing, prior head injuries, and psychiatric difficulty. *Id.* at 521. The Pennsylvania Supreme Court had forbidden PCRA courts from simply adopting the government's reasoning on PCRA review in the face of such conflicting fact testimony. *Id.* at 522. On remand, it appears that the parties disagreed about the scope of any evidentiary hearing to be conducted. *See Commonwealth v. Williams*, 980 A.2d 510, 516 (Pa. 2009) (*Williams III*). After two years of legal wrangling, the Commonwealth conceded that a new penalty phase was warranted. *Id.* Unfortunately, the opinion of the Supreme Court reciting these facts merely states, "The document filed by the Commonwealth did not reveal the basis for its belief that a new penalty hearing should be granted." *Id.* at 517 n.7. Given that Williams had submitted multiple affidavits of lay witnesses and medical professionals, it stands to reason that a penalty phase hearing would require live testimony by fact and expert witnesses. The Commonwealth argued that despite its concession regarding Williams' death sentence, the PCRA court could proceed to dismiss the guilt-phase claims on the merits. *Id.* at 517. The PCRA agreed. Williams appealed the PCRA court's guilt-phase dismissal, and the litigation continued for several more years.

Undersigned counsel has no way to know whether re-imposition of the death penalty was a "realistic possibility" following remand, but submits that with each

liberty interest in avoiding a restraint amounting to an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005) (citation omitted). Thus, for the reasons set forth below and in Appellants' opening brief, this Court should conclude that Appellants' solitary confinement on death row contravened the Due Process Clause. In this reply brief, Appellants do not restate the arguments from their opening brief, but instead respond only to discrete points made by Appellees.[2]

## ARGUMENT

Appellees' principal claim is that a prisoner has no state-created liberty interest to avoid years-long solitary confinement on death row after his or her death sentence has been vacated. In fact, Appellees contend, the Department of Corrections' policy requires that such a prisoner remain on death row until he or

---

passing year, the extent to which that possibility was "realistic" diminished significantly. Mr. Williams was initially convicted in October 1992. He filed his first petition for post-conviction relief in May 1996. Ten years later, after his sentence was vacated, it seems unlikely (or at least highly difficult) that the Commonwealth could conduct, without significant difficulty, an evidentiary hearing requiring fact-finding and credibility determinations of witnesses whose memories would be timeworn. The prospect of such a hearing likely diminished further by May 2012, when Williams was finally resentenced to life without parole.

[2] On March 22, 2016, the Clerk of Court issued a letter requesting that Appellants file supplemental briefing addressing the issue of qualified immunity on or before April 1, 2016. In an effort to comply with that request, Appellants' counsel will not address qualified immunity in this reply brief and will instead confine Appellants' arguments regarding qualified immunity to a supplemental brief to be filed on or before April 1, 2016.

3

she is formally resentenced—whether that takes requires six months, six years, or longer. For the State, no passage of time is sufficient to trigger a liberty interest within the contemplation of the Due Process Clause.

But the existence of a state-created liberty interest does not turn on the application of a state's written policies or regulations. Indeed, the Supreme Court moved away from such an approach to due process claims in *Sandin v. Conner*, 515 U.S. 472 (1995). There, the Court set forth a new inquiry that shifted the focus away from "the language of a particular regulation" and toward "the nature of the deprivation." *Id.* at 481. *Sandin*'s repurposed due process inquiry sought to avoid overreliance on regulatory language and to instead center the inquiry on the alleged deprivation. *Id.* As a result, the *Sandin* Court explained that a state-created liberty interest generally will be linked to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

This Court has applied the *Sandin* decision to hold "that state-created liberty interests could arise only when a prison's action imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Shoats*, 213 F.3d at 143 (quoting *Sandin*, 515 U.S. at 483); *see also Powell v. Weiss*, 757 F.3d 338, 346 (3d Cir. 2014) (explaining that "state-created liberty interests are 'limited to freedom from restraint which . . . imposes atypical and

4

significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S. at 484). As the Court observed in *Powell*, the state-created liberty test that governs procedural due process claims in this Circuit is the one set forth in *Shoats*. *Powell*, 757 F.3d at 346.

If, as Appellees contend, state-created liberty interests were dependent on the state's promulgation of a specific law, regulation or written policy, then the test set forth in *Shoats* could not be good law in this Circuit. In *Shoats*, the plaintiff was a prisoner who had been housed in administrative custody for eight years. *Shoats*, 213 F.3d at 144. Like Appellants, Shoats was confined to a solitary cell for most of every day; he took meals by himself; he was denied contact with most outsiders; and he was prohibited from participating in most education, vocational, or other organizational activities. *Id.* at 144. In accordance with governing DOC policy, however, Shoats' confinement status was regularly reviewed and reaffirmed. *Id.* at 142-43. Prison officials, in other words, were complying with DOC policy.

Although prison officials were in compliance with DOC policies, the Court nonetheless found that Shoats "had a protected liberty interest that has been adversely affected by his indefinite segregation in administrative custody." *Id.* at 144. Given the significant effect of isolated confinement, coupled with no prospect for immediate release, application of DOC's policies created an "atypical" and "significant hardship" relative to ordinary prison life. *Shoats*, in short, refutes

Appellees' contention that a state-created liberty interest can only spring from some violation of written law, regulation, or policy. Here, just as in *Shoats*, Appellees strictly applied DOC policy to Appellants, confining them on death row for years longer than necessary pursuant to 61 Pa. Cons. Stat. § 4303. But that years-long, indefinite confinement with no prospect of immediate release raised a state-created liberty interest because Appellants, like Shoats, were thereby subject to atypical and significant hardship given their continued death row confinement years after their death sentences were set aside.[3]

What Appellees' argument elides is the extent to which *indefinite* detention in solitary confinement may trigger the rise of a state-created liberty interest. In *Shoats*, although prison official complied with all relevant DOC policies, the court was troubled that Shoats had no prospect of release from his years-long confinement predicament. The Fifth Circuit was similarly troubled in *Wilkerson v. Goodwin*, 774 F.3d 845 (5th Cir. 2014), finding a due process interest when the plaintiff was held in solitary confinement for nine years with no end in sight. So too was the Sixth Circuit, finding that a state-created liberty interest when a

---

[3] Appellees further rely on a divided decision from the Fourth Circuit—*Prieto v. Clarke*, 780 F.3d 245 (4th Cir. 2015)—to support their contention that a liberty interest must arise from a written policy or regulation. Appellees' Br. at 18. But *Prieto* cannot possibly be the law in this Circuit because it could not coexist with *Shoats*. In *Shoats*, all parties agreed that the written policies were followed—yet Shoats' detention nonetheless raised a state-created liberty interest.

prisoner was held for over three years in solitary confinement, with no foreseeable day of release. *See Harden-Bey v. Rutter*, 524 F.3d 789, 793-94 (6th Cir. 2008).

The presence of indefinite confinement conditions also serves to distinguish two previous decision of this Court cited by Appellees. In *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997), the plaintiff was confined in administrative custody with a right to release or re-review at twenty-day intervals. *Id.* at 708. During his period of confinement, the plaintiff was also permitted to discuss his condition with a review committee, who provided feedback. *Id.* at 705. Although the plaintiff remained in such custody for fifteen months, he was ultimately released. *Id.* at 705. *Griffin* is not instructive here. In *Griffin*, the plaintiff's confinement was not unduly lengthy and he had regular opportunities for review. Thus, his confinement was not "atypical" or a "significant hardship" vis-à-vis ordinary prison life. In addition, and perhaps most importantly, it was not indefinite.

So too is *Fantone v. Latini* inapposite. There, the plaintiff was transferred to a restricted housing unit as a disciplinary measure, where he was confined for a set terms of days and subject to regular reviews. 780 F.3d 184, 189-90 (3d Cir. 2015). The court rejected the notion that this condition was "atypical" or imposed a "significant hardship." What is notable here is that the *Fantone* plaintiff, like the plaintiff in *Griffin*, was also not confined in a restrictive condition indefinitely.

7

Here, by contrast, Appellants were housed in solitary confinement on death row for four and six years, respectively, following vacatur of each prisoner's death sentence. During that onerous confinement on death row, neither had a prospect of foreseeable release. Thus, although prison officials complied with the letter of 61 Pa. Cons. Stat. § 4303, compliance with that statute came triggered Appellants' state-created liberty interest to avoid atypical and significant hardships given the vacatur of their death sentences. Appellants were, in short, entitled to the individual review and classification that other inmates in the Pennsylvania prison system receive. This Court should follow its precedent in *Shoats* and find that Appellants' procedural due process rights were violated.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Appellants' opening brief, the judgments of the district courts in these consolidated appeals should be reversed and remanded for further proceedings consistent with the Court's opinion.

Dated:	March 28, 2016
	New York, New York

Respectfully submitted,

*/s/ James J. Bilsborrow*
James J. Bilsborrow
(NY Ref: #4702064)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
T: (212) 558-5500
F: (646) 293-7937
*jbilsborrow@weitzlux.com*

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that:

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief (as indicated by the word processing program Microsoft Word) contains less than 7,000 words, exclusive of the portions excluded by Rule 32(a)(7)(B)(iii). I further certify that this brief complies with the typeface requirements of Rule 32(a)(5) and type style requirements of Rule 32(a)(6) because this brief has been prepared in the proportionally spaced typeface of 14-point Times New Roman.

CERTIFICATE OF SERVICE

I certify that on this date, March 28, 2016, I caused the foregoing Consolidated Reply Brief of Appellants to be electronically filed with the Clerk of Court for the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ James J. Bilsborrow*

Dated: March 28, 2016
New York, New York